## Case No. 6,369.

### In re HENRICH.

[5 Blatchf. 414; [1] 10 Cox, Cr. Cas. 626.]

Circuit Court, S. D. New York. June 12, 1867.

EXTRADITION — FORGERY — JURISDICTION OF COMMISSIONER — DOCUMENTARY EVIDENCE — PROCEEDINGS BEFORE COMMISSIONER—APPEAL.

1. This court has power, on a writ of habeas corpus, in conjunction with a writ of certiorari, to revise the action of a commissioner of this court, committing a fugitive from justice for surrender under an extradition treaty between the United States and a foreign country.
[Cited in Re Macdonnell, Case No. 8,772; Re Stupp, Id. 13,563; Re Kelley, Id. 7,655; Ex parte Perkins, 29 Fed. 908; Re Fergus, 30 Fed. 607; Ex parte McCabe, 46 Fed. 369.]

2. This court will look into the evidence on which the judgment of the commissioner rested, and will pass upon its weight, as well as upon its competency.
[Cited in Re Roth, 15 Fed. 507.]

3. Under a warrant issued by a justice of the supreme court, directed to the marshals of the United States for any district respectively, and to their deputies. or the deputies of any of them, or to any of said deputies, commanding them, and each of them, to arrest such alleged fugitive for such surrender, and bring him before the said justice, or a commissioner named therein, or some other magistrate, at New York, a deputy of the marshal of the United States for the Southern district of New York has the right to arrest such person in Wisconsin, and bring him before such commissioner, and such commissioner has jurisdiction of the case, under such an arrest.

4. Where the crime is forgery, the complaint on which such warrant is founded may charge more than one forgery.

5. The act of June 22, 1860 (12 Stat. 84), enlarges the class of documentary evidence which may be adduced in support of the charge of criminality, beyond that authorized by the act of August 12, 1848 (9 Stat. 302), so as to admit any depositions, warrants, or other papers, or copies of the same, which are so authenticated that the tribunals of the country where the offence was committed would receive them for the same purpose.
[Cited in Re Farez. Case No. 4,645; Re Macdonnell. Id. 8,771; Re Stupp. Id. 13,563; Re Fowler, 4 Fed. 308; Kurtz v. Moffitt, 115

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

U. S. 497, 6 Sup. Ct. 151; Re McPhun, 30 Fed. 59; Re Charleston, 34 Fed. 584; Re Manning, 44 Fed. 276; Oteiza v. Jacobus, 136 U. S. 338, 10 Sup. Ct. 1034; Re Adutt, 55 Fed. 378.]

6. The proper form of such authentication considered.

[Cited in Re Wadge, 15 Fed. 865, 16 Fed. 333.]

7. The decision of the commissioner sustained.

8. Rules prescribed for the conduct of proceedings under extradition treaties: (1) Demand for surrender and mandate of the president; (2) previous designation of the commissioner before whom the warrant of arrest is returnable; (3) certificates to documentary evidence; (4) record, by the commissioner, of the proceedings before him; (5) verified translations of documents in foreign languages; (6) contents of complaint.

[Cited in Re Thomas, Case No. 13,887; Ex parte Van Hoven, Id. 16,858.]

9. Where the commissioner acts, in such a case, on legal evidence, this court will not reverse his judgment, except for substantial error in law, or for such manifest error in fact as would warrant a court in granting a new trial for a verdict against evidence.

[Cited in Re Stupp, Case No. 13,563; U. S. v. Brawner, 7 Fed. 87.]

10. No appeal lies from the decision of this court, on a habeas corpus, in an extradition case.

On the 4th of December, 1866, the president of the United States, upon the application of the Baron Von Gerolt, accredited to the government of the United States as envoy extraordinary and minister plenipotentiary of Prussia, issued his mandate to the proper magistrates of the United States, requesting them to cause the arrest of Phillip Henrich, an alleged fugitive from Prussia, charged with the crime of forgery, that the evidence of his criminality might be heard and considered, and, if deemed sufficient to sustain the charge, that the same might be certified, together with a copy of all the proceedings, to the secretary of state, in order that a warrant might issue for the surrender of the fugitive, under the stipulations of the convention between the United States and Prussia and other states of the Germanic Confederation, entered into June 16, 1852 (10 Stat. 964). On the 12th of December, 1866, the Honorable Guido Von Grabow, acting consul general of the kingdom of Prussia, for the United States, duly made complaint before Kenneth G. White, Esquire, a commissioner of the circuit court for the Southern district of New York, one of the magistrates properly designated by the president's mandate, setting forth the crimes alleged to have been committed by the fugitive, and praying for a warrant of arrest, that he might be surrendered to the authorities of Prussia, pursuant to the treaty stipulations between the two countries. This application to the commissioner was accompanied by a copy of the warrant of arrest issued by the authorities of Prussia, duly authenticated, and certified at Berlin by the minister of the United States to that country. On the same day (December 12th, 1866,) the Honorable Samuel Nelson, one of the justices of the supreme court of the United States, and the presiding judge of the circuit court for the Southern district of New York, on proper application being made to him, issued his warrant, directed to the marshals of the United States in any district, or to any of their deputies, commanding them, and each of them, to arrest Henrich forthwith and bring him before said justice, or Commissioner White, at the city of New York, or some other magistrate, that the evidence of the criminality of said Henrich might be heard and considered, pursuant to the treaty stipulations referred to, and the acts of congress in such case made and provided. This warrant was placed in the hands of Robert Murray, Esquire, marshal of the United States for the Southern district of New York, who, on the 14th of December, 1866, duly deputed a person to execute the same. Under and by virtue of this warrant, Henrich was arrested, and, on the 30th of March, 1867, he was brought before Commissioner White, at the city of New York, for examination. This examination took place from time to time, under regular continuances, and terminated on the 29th of April, 1867, when, after hearing the evidence, and the counsel for the Prussian government, and the counsel for the prisoner, the commissioner adjudged the evidence produced sufficient to sustain the charge, and committed Henrich to the custody of the marshal, to be kept in custody till he should be surrendered by the executive authority of the United States, under the provisions of the treaty. At this stage of the case an application was made to this court for a writ of habeas corpus, to produce Henrich in court. The object of this writ was stated to be, to procure a revision by this court of the whole proceedings in the case, including the final judgment of the commissioner. By an arrangement between the counsel for Prussia and the prisoner, the question whether this court had the power to revise the judgment of a commissioner in a case of extradition, was fully argued. It was held, by Judge Shipman, after consultation with Mr. Justice Nelson, that it had such power, and, on the 23d of May, 1867, a writ of habeas corpus was issued to the marshal, to bring the body of Henrich before this court, and a writ of certiorari was directed to the commissioner, to send up all the papers and proofs upon which he had acted in the premises. Both of these writs were promptly obeyed, and the whole subject came before the court, and was argued by counsel on both sides.

Henry D. Lapaugh, for the United States.
Charles Wehle, for the prisoner.

SHIPMAN, District Judge. I now proceed to dispose of the material questions which have been raised in this case. But, before

enumerating and disposing of the precise points raised by the prisoner's counsel against the proceedings and the judgment of the commissioner thereon, it is proper that I should make some observations on the power of the courts of the United States and the justices and judges thereof, through the medium of the writs of habeas corpus and certiorari, to revise the action of commissioners, when they commit persons for surrender under extradition treaties. A correct understanding of this subject is important, in view of the fact that this power is so often and so persistently contested. The decisions on this subject have not always been uniform. In the Case of Veremaitre and others, fugitives from the French republic [Case No. 16,915], Judge Judson. sitting in the district court of the United States for the Southern district of New York, held, that he had no power to revise the judgment of the commissioner on the question of fact; and, on inspecting the papers and finding them sufficient on their face, he declined to review the proofs, and remanded the prisoners, to be held subject to the warrant of the commissioner, and the action of the executive authorities of the United States. In the Case of Kaine [Id. 7,598], Judge Betts, in the circuit court for this district, delivered an elaborate opinion covering various questions, and substantially affirming the rule laid down by Judge Judson. The same doctrine was laid down by Judge Ingersoll, in the district court for this district, in the case of Heilbronn [Id. 6,323]. In the case last cited the judge remarks: "Where there is any legal evidence before the commissioner to establish the charge, and that legal evidence is deemed by him sufficient, no matter how many others may deem it insufficient, and he grants a warrant of commitment, that commitment must stand, and no judge has a right to disregard it, or to render it ineffectual, at least not till the expiration of two calendar months after it shall have been issued. In such a case, no one can revise the opinion of the commissioner but the president. The president has that power. If he should be of opinion that the evidence taken before the commissioner on the hearing was not sufficient to sustain the charge, then it would be his duty to withhold a warrant of extradition. If it should be his opinion that it was sufficient, then it would be his duty to grant such warrant. The necessities of the case, therefore, do not require that I should express an opinion upon the sufficiency of the evidence upon the hearing before the commissioner." At a still later date, in the case of Ex parte Van Aernam [Id. 16,824], Judge Betts said: "In my view of the subject, this court, on return before it of a writ of habeas corpus, has no further power than to ascertain and determine whether the prisoner stands charged with a criminal offence subjecting him to imprisonment, and whether the commissioner possessed competent authority to inquire into and adjudge upon that complaint. I find affirmatively, in this case, on both those inquiries, and, therefore, decide, that I have no authority, under this writ, to review the justness of the decision of the commissioner."

The Case of Kaine, which I have already cited, deserves a further notice. The controversy touching his extradition went through various phases, with different results, in different courts. He was first arrested and brought before a commissioner, upon the complaint and requisition of the British consul for the port of New York, and, after a hearing, the commissioner adjudged the evidence produced sufficient to justify his commitment for surrender, under the charge made against him. He was subsequently brought before the circuit court, on a writ of habeas corpus, and remanded, upon grounds fully set forth in the opinion of Judge Betts, above cited. After this, and after the acting secretary of state had issued a warrant, directing the marshal to deliver up Kaine to the British consul, the matter was brought before the supreme court of the United States. That tribunal was divided in opinion upon several questions involved in the case, and authoritatively decided only one point, and that was, that it had no jurisdiction of the controversy. 14 How. [55 U. S.] 103; 6 Op. Atty. Gen. p. 93. Subsequently, Mr. Justice Nelson, sitting at chambers, issued a writ of habeas corpus, and brought the prisoner before him. Upon the return to the writ, it was objected, that the decision of Judge Betts, sitting in the circuit court, upon the return to the writ of habeas corpus before that court, it being a court of competent jurisdiction to hear and determine the question whether the commitment under the commissioner's order or warrant was legal or not, was conclusive, and a bar to any subsequent inquiry into the same matters by virtue of that writ. But Mr. Justice Nelson overruled this objection, for reasons stated in his opinion. Ex parte Kaine [Case No. 7,597]. He then proceeded to examine the case on the evidence which the commissioner had received in support of the charge, and decided that the same was not competent, and, therefore, did not justify the conclusion of guilt at which the commissioner had arrived. There were other points decided and enforced in the same opinion, which it is unnecessary to mention in this place, as they have no bearing on the case now before the court. It is true, that Mr. Justice Nelson, in the Case of Kaine, decided that the commissioner had no competent evidence before him. He, therefore, did not directly determine the precise question whether, if the commissioner had had competent evidence presented to him, tending to prove the charge of criminality, it would have been within the rightful power of the court, or of the judge at chambers, to review that evidence, and, if he thought it failed to support the charge against the prisoner, to discharge

him from custody, under the commissioner's warrant. But the whole spirit and scope of his reasoning, in the opinion delivered by him in the supreme court, as well as in the one delivered by him at chambers, tend toward the assertion and vindication of this power. To set the matter at rest, however, I am authorized by him, after full consultation on the point, to state that such is his judgment of the law. It is, then, the law of this court, and it is, therefore, the duty of the court, in the present case, to look into the evidence upon which the judgment of the commissioner rested, and which he has certified up to this tribunal, in compliance with the writ directed to him, and to pass upon its weight as well as upon its competency. Some practical considerations touching the course which should be pursued in the performance of this duty, in this case and similar cases, will be referred to in another part of this opinion. I have dwelt at length on this branch of the case, in order, if possible, to prevent misconstruction hereafter, in controversies of this character. I now proceed to the examination of this case on its merits, and to apply the legal rules which must govern it.

The first two objections to the action of the commissioner, raised by the prisoner's counsel, rest upon the fact that he was arrested in Wisconsin, by a special deputy of the marshal of the Southern district of New York. It is insisted that this deputy had no legal authority to execute the warrant of Mr. Justice Nelson out of the limits of this district, and the 27th section of the judiciary act of September 24, 1789 (1 Stat. 87), is referred to as conclusive on this point. This section gives the marshal no authority to execute precepts beyond the limits of his district, and it is, therefore, argued, that the deputy in this case could not lawfully execute this warrant in another district. The warrant in question was issued by Mr. Justice Nelson and addressed to the marshals of the United States for any district respectively, and to their deputies, or the deputies of any of them, or to any of said deputies. The precept is to each and every of them, in the name of the president of the United States, to apprehend the said Phillip Henrich, and forthwith bring him before the said justice, or before the commissioner named, or some other magistrate, at New York, &c. The operation of the warrant is not limited in terms to any judicial district. The fugitive was not to be apprehended for any crime committed against the United States, for which he was amenable to trial in any particular district. His extradition was not sought from any district as such, but from the United States. He was to be arrested in order that he might be delivered, on good cause being shown, to the agents of the government from which he had fled. The section of the judiciary act referred to has no application to an arrest under an extradi-

tion treaty. No such treaty was in existence when the act was passed, and no proceedings under such a treaty could have been contemplated by its framers. Indeed, an application of the implied restrictions of that act relating to marshals, to warrants for the arrest of fugitives from foreign states, would make the execution of these treaties depend wholly upon the magistrates of the district in which such fugitives might be arrested. Under such a construction, the hearing and delivery must be in the district where the arrest is made, as no judge or marshal could remove him to another district.

The 33d section of the judiciary act, authorizing and regulating the removal of parties arrested in one district, to be held for trial in another, clearly has no application to such a case as the present. It is claimed that the marshal of Wisconsin should have arrested Henrich under this warrant. But he could not have performed the duty required by the warrant, under the construction of the law urged; for, if his powers under it are to be confined to his own district, then he could not have executed that part of the precept which required him to bring the accused before Mr. Justice Nelson, or Commissioner White, at New York. Considering the object of the treaty, the provisions of the statute for carrying it into effect, by authorizing the arrest of the fugitive in any state or territory of the United States, and the scope of Mr. Justice Nelson's warrant, I am satisfied that the arrest was legal, and that the commissioner had jurisdiction.

The third objection to the proceedings is, that the complaint upon which the warrant is founded contains charges of a large number of offences. The claim is, that only one crime should be charged in the same complaint. No argument is necessary to refute such an objection. If a fugitive can be surrendered for the commission of one forgery, he certainly can for the commission of fourteen, the number charged in this complaint. These offences are distinctly alleged in the complaint, and their joinder in the same instrument is no more objectionable than it would be in an indictment. This not only might be, but it is required to be, done by the laws of the United States. The complaint is specific and full, and the crimes charged are set forth with all the particularity necessary in a proceeding of this character.

The fourth objection is founded upon the admission by the commissioner of certain declarations of the prisoner after his arrest, sworn to by the special deputy who had him in custody. They were of so trifling and unimportant a character that I should not be justified in dwelling upon them. I think they were admissible, but they are of little weight on a question of guilt.

The fifth objection is, that the documentary evidence received by the commissioner in support of the charge of criminality, was

inadmissible, because not authenticated according to law. This objection must be tested by a reference to the acts of congress regulating the admission of evidence in extradition cases. The 2d section of the act of August 12, 1848 (9 Stat. 302), provides, that, at the hearing upon the return of the warrant of arrest, copies of the depositions upon which an original warrant in such foreign country may have been granted, certified under the hand of the person or persons issuing such warrant, and attested, upon the oath of the party producing them, to be true copies of the original depositions, may be received in evidence of the criminality of the persons so apprehended. This provision was altered and enlarged by the act of June 22, 1860 (12 Stat. 84), which provides, that, in all cases where any depositions, warrants, or other papers, or copies thereof, shall be offered in evidence, under the above section of the act of August 12, 1848, such depositions, warrants, and other papers, or copies thereof, shall be admitted and received for the purposes mentioned in said section, if they shall be properly and legally authenticated, so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped, and that the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country, shall be proof that any paper or other document so offered is authenticated in the manner required by such act of 1860. It will be seen, by comparing the acts above cited, that the one of June 22, 1860, enlarges the class of documentary evidence which may be adduced in support of the charge of criminality. In addition to the depositions upon which the foreign warrant of arrest may have issued, embraced in the 2d section of the act of August, 1848, it provides for the admission of any depositions, warrants or other papers, or copies of the same, which are so authenticated that the tribunals of the country where the offence was committed, would receive them for the same purpose. Whether they are so authenticated, is to be determined by the certificate of our own principal diplomatic or consular officer resident in the foreign country.

The papers offered in evidence are numerous, but I shall notice only a few of them. The first to which I will refer is a complaint or information of the directors of the Rhenish Railroad Company, dated at Cologne, January 13, 1866, addressed to the royal chief procurator. This is not a merely formal accusation, containing only technical allegations of the forgeries in question, but an elaborate statement of facts and circumstances in support of the charge. A further complaint and statement of the same character is appended to this, dated five days later. The two form one document. This paper is properly attested as a true copy, by the secretary of the county court, under seal. The secretary's signature is attested by the president of the court, under seal, and the latter adds a certificate that the document is a valid piece of evidence by the laws of Prussia. The signature of the president is then attested, and the same certificate, as to the validity of the document as evidence, is given, under seal, by the first president of the royal Rhenish court of appeals. The signature of the latter is then attested by the minister for foreign affairs. The document is then authenticated by our late minister at Berlin, Mr. Wright, with his certificate that the paper is legally authenticated, so as to be entitled to be received for similar purposes by the tribunals of the kingdom of Prussia. This certificate is under the seal of the United States legation.

Some criticism has been made upon the certificate of Mr. Wright, on the ground that it does not state explicitly that this paper is admissible by the tribunals of Prussia in support of the charge of criminality. It is urged that the words "similar purposes," in the certificate, are not definite enough. By reference to the 2d section of the act of August 12th, 1848, it will be seen, that the purposes for which certain documentary evidence was made admissible, were, to support the charge of criminality. The documentary evidence made admissible by the act of June 22, 1860, is declared to be for the same purposes mentioned in the 2d section of the act of 1848, and includes all papers which are received by the foreign tribunals for "similar purposes." The meaning of the certificate is perfectly obvious, when considered in reference to its object, and in connection with the certificates of the Prussian officials. The latter declare it to be a valid piece of evidence touching the charge of criminality, which it embraces and sets forth with particularity. This paper is authenticated by our minister, is made admissible by our statute, and was, therefore, properly received by the commissioner. The same remarks apply to the depositions, twelve in number, which are also fully attested by various Prussian officials, and to which a similar certificate of our minister is attached.

By these documents, to say nothing of others in the case, it appears, that the prisoner was the secretary of the Rhenish Railroad Company at Cologne; that that company purchased lands of various parties; and that he obtained and applied to his own use the purchase money in a number of instances, by forging the names of the vendors to receipts, or by the use of such receipts knowing them to be forged. The evidence of forgery is very strong, and, so far as its weight is concerned, is, in the language of the treaty, "such evidence of criminality, as, according to the laws of the place where the fugitive or person so charged shall be found, would justify his apprehension and commitment for trial, if the crime or offence had there been committed." There is other evi-

dence in the case, which I have not deemed it necessary to comment upon. I am satisfied that the commissioner came to a correct conclusion, and shall, therefore, dismiss the writ, and remand the prisoner to the custody of the marshal, to be held by him under the commissioner's warrant, to await the final action of the executive authorities at Washington.

Before finally dismissing this case, I will endeavor to make some suggestions which may tend to prevent some of that uncertainty, confusion and prolixity which have so often characterized these proceedings under our extradition treaties.

1. It would seem indispensable that a demand for the surrender of the fugitive should be first made upon the executive authorities of the government, and a mandate of the president be obtained, before the judiciary is called upon to act. See Mr. Justice Nelson's opinion in Re Kaine [Case No. 7,597]. At all events, this would be the better practice, and one in keeping with the dignity to be observed between nations, in such delicate and important transactions.

2. Where the warrant of arrest is returnable before a commissioner for hearing, it should be one who has been previously designated by the circuit court under which he holds his office, as a commissioner for that purpose. In re Kaine. 14 How. [55 U. S.] 142, 143.

3. Each piece of the documentary evidence offered by the agents of the foreign government, in support of the charge of criminality, should be accompanied by a certificate of the principal diplomatic or consular officer of the United States, resident in the foreign country from which the fugitive shall have escaped, stating clearly that it is properly and legally authenticated, so as to entitle it to be received in evidence in support of the same criminal charge by the tribunals of such foreign country.

4. The commissioner before whom an alleged fugitive is brought for hearing, should keep a record of all the oral evidence taken before him, taken in narrative form and not by question and answer, together with the objections made to the admissibility of any portion of it, or to any part of the documentary evidence, briefly stating the grounds of such objections, but he should exclude from the record the arguments and disputes of counsel.

5. The parties seeking the extradition of the fugitive should be required by the commissioner to furnish an accurate translation of every document offered in evidence which is in a foreign language, accompanied by an affidavit of the translator, made before him or some other United States commissioner, or a judge of the United States, that the same is correct.

6. The complaint upon which a warrant of arrest is asked should set forth clearly, but briefly, the substance of the offence charged, so that the court can see that one or more of the particular crimes enumerated in the treaty, is alleged to have been committed. This complaint need not be drawn with the formal precision and nicety of an indictment for final trial, but should set forth the substantial and material features of the offence.

It should be understood that, in the exercise of this power of revising, on habeas corpus, the judgment of the commissioner, this court will not reverse his action upon trifling grounds, or for mere errors in form. When designated by the court, he is fully empowered to hear and decide the questions of criminality, and, where he has legal evidence before him, this court will not reverse his judgment except for substantial error in law, or for such manifest error in fact, as would warrant a court in granting a new trial for a verdict against evidence.

I have had a full consultation with my brethren, Mr. Justice Nelson and Judge Blatchford, in reference to this case, and I am authorized to state that they concur with me in the views expressed in this opinion. Let an order be entered dismissing the writ of habeas corpus in this case, and remanding the prisoner to the custody of the marshal, under the commissioner's warrant.

NOTE. After the foregoing decision was rendered, the counsel for Henrich applied to Mr. Justice Nelson, and also to Judge Shipman, to allow an appeal in the case, to the supreme court. The application was refused by each of them, on the ground that the habeas corpus in this case was issued under the authority conferred by the 14th section of the judiciary act of September 24, 1789 (1 Stat. 81); that no appeal was provided for by law, in the case of a habeas corpus issued under that act; and that the appeal provided for, in cases of habeas corpus, by the 1st section of the act of February 5, 1867 (14 Stat. 385), was confined to cases where the habeas corpus was issued under the authority conferred by the last named act, which was an authority in addition to the authority theretofore conferred by law, and extended to cases not covered by the act of 1789, where a person was "restrained of his or her liberty in violation of the constitution or of any treaty or law of the United States."