## In re FOWLER.

(*Circuit Court, S. D. New York.* ——, 1880.)

1. EXTRADITION — EVIDENCE — ACT OF JUNE 19, 1876, (19 U. S. ST. AT LARGE, 597)—REV. ST. § 5271.—The act of June 19, 1876, (19 U. S. St. at Large, 597,) amending section 5271 of the Revised Statutes, relating to cases of extradition, provides: "In every case of complaint and of a hearing, upon the return of a warrant of arrest, any depositions, warrants, or other papers offered in evidence shall be admitted and received for the purpose of such hearing, if they shall be properly and legally authenticated, so as to entitle them to be received as evidence of the criminality of the person so apprehended by the tribunals of the foreign country from which the accused party shall have escaped; and copies of any such depositions, warrants, or other papers shall, if authenticated according to the law of such foreign country, be in like manner received as evidence; and the certificate of the principal diplomatic or consular officers of the United States resident in such foreign country shall be proof that any such deposition, warrant, or other paper, or copy thereof, is authenticated in the manner required by this section." *Held*, that this section as thus amended provides for two classes of documentary evidence—*First*, original depositions, original warrants, and original "other papers;" *second*, copies of "any such depositions, warrants, or other papers."

2. SAME—ORIGINAL DOCUMENTS—AUTHENTICATION.—*Held, further*, that the first class, the originals, must be documents which would be entitled to be received in the tribunals of the foreign country as evidence of the criminality of the person, in respect to the offence charged against him as committed there, if the inquiry as to his criminality in respect of such offence were being had in such foreign tribunals; and such originals must be authenticated in such a proper and legal manner as would entitle them to be received as such evidence in such foreign tribunals.

3. SAME—COPIES—AUTHENTICATION.—*Held, further*, that the second class, the copies, must be copies of original documents, which originals would be entitled to be received in the tribunals of the foreign country as evidence of the criminality of the person, in respect to the offence charged against him as committed there, if the inquiry as to his criminality in respect of said offence were being had in such foreign tribunals, and such copies must be " authenticated according to the law of such foreign country;" that is, authenticated as true copies of such originals, the authentication being made according to the law of the foreign country.

4. SAME—AUTHENTICATION—PROOF.—*Held, further*, that there was nothing in the statute which made the certificate of the United States diplomatic or consular officers the only competent proof that either the originals or the copies were authenticated in the manner required by the statute.

5. SAME—SAME—SAME.—*Held, further*, that the original papers might be authenticated by oral proof.

6. SAME—SAME—SAME.—*Held, further*, that there was nothing in the statute which necessarily excluded the authentication of the copies by oral proof, or excluded oral proof as to what the law of the foreign country was as to such authentication, or oral proof that such oral authentication was according to the law of the foreign country.

7. HABEAS CORPUS—QUESTION OF FACT—DECISION OF COMMISSIONER.— The decision of a United States commissioner as to the fact of the criminality of the accused, in a case of extradition, cannot be reviewed by the circuit court on a writ of *habeas corpus*.

*Habeas Corpus.*

*Edward Heaton,* for relator.

*Francis I. Marbury,* for the British Government.

BLATCHFORD, C. J.   This case is before the court on *habeas corpus,* in proceedings for extradition brought before this court by a *certiorari.*   On a complaint made before Commissioner Osborn by the consul general of Great Britain, at New York, that the relator, George Fowler, *alias* R. Gray, had, on the eighteenth of September, 1880, at Bradford, in England, committed the crimes of forgery and the utterance of forged paper, by feloniously forging and uttering, knowing the same to be forged, a check or bank draft dated at Bradford, on that day, for £10 sterling, payable to the order of W. Jowett, and purporting to be drawn by said Jowett on the Bradford Banking Company, limited, and indorsed by said

Jowett, with intent thereby to defraud said Jowett, or said company; that said Fowler had, on said day, at Bradford, feloniously forged, and afterwards feloniously uttered, knowing the same to be forged, a check or bank draft dated Bradford, September 18, 1880, for £50 sterling, payable to the order of W. Jowett, and purporting to be drawn by said Jowett on said company, and indorsed by said Jowett, with intent thereby to defraud said Jowett or said company, and which complaint set forth the other necessary matters, the said commissioner issued the proper warrant for the arrest of said Fowler, with a view to his extradition under article 10 of the treaty of August 9, 1842, between the United States and Great Britain, (8 U. S. St. at Large, 576.) The relator was arrested and brought before the commissioner, and, as the result of the hearing, the commissioner decided that the evidence was sufficient to sustain the charge, and he committed the relator to the custody of the marshal to await a warrant of surrender.

In the course of the hearing before the commissioner, certain documentary evidence was offered by the prosecution, and admitted under the objection of the relator. There is a copy of an information and complaint sworn to by Jowett, September 21, 1880, at Bradford, before a justice of the peace there, charging Fowler with having feloniously forged and uttered the banker's checks for £60 sterling, with intent to defraud. Such copy is certified by Angus Holden, a justice of the peace at Bradford, to be a true copy of the original information. On the back of the copy is a certificate by Godfrey Lushington, assistant under secretary of state for the home department, certifying that the signature of Holden is the signature of a magistrate in England, having authority to take the information, and that the information "so verified by a magistrate, when the same was taken and authenticated by a minister of state, and sealed with his official seal, would be received as evidence of the criminality of a fugitive criminal from the United States charged before a tribunal in Great Britain with an extradition crime under the extradition treaty as existing between that country and the United States."

Under said certificate is a certificate by T. V. Lister, assistant under secretary of state, sealed with the seal of the foreign office, certifying that Lushington's said signature is the handwriting of Godfrey Lushington, assistant under secretary of state for the home department. Under said two certificates is a certificate by J. R. Lowell, envoy extraordinary and minister plenipotentiary of the United States of America, made at the legation of the United States, London, under the seal of the legation of the United States of America to Great Britain, certifying that Lister's said signature is the handwriting of G. V. Lister, "one of the assistant under secretaries of state for foreign affairs, and that the annexed documents are authenticated in the manner required by the statutes of the United States."

There is also a copy of a warrant, issued at Bradford, September 21, 1880, by a justice of the peace there, reciting said information, and commanding the constables of Bradford to arrest Fowler, and bring him before a justice of the peace to answer said information. This copy is certified by Angus Holden, a justice of the peace at Bradford, to be a true copy of the original warrant.

On the back of the copy is a certificate by said Lushington of the same tenor, *mutatis mutandis*, as his certificate on the back of the copy of the information. Under said certificate is a certificate of Julian Pauncefote, assistant under secretary of state of foreign affairs, sealed with the seal of the foreign office, of the same tenor as the said certificate of said Lister. Under said two certificates is a certificate by Mr. Lowell, made at the legation of the United States, London, under the seal of the legation of the United States to Great Britain, certifying that Pauncefote's said signature was the handwriting of Sir Julian Pauncefote, "one of the assistant under secretaries of state for foreign affairs, and that the annexed documents are authenticated in the manner required by the statutes of the United States." There are, also, an original deposition of William Jowett, and an original deposition of Edwin I. Hustler, signed by them respectively, and sworn to at Bradford, September 30, 1880, before W. Pollard, a justice of the peace

there, in reference to said forgeries. These depositions bear certificates of the same character, from the home department, and the foreign office, and the United States legation, as those certifying the copies of the information and the warrant.

The second section of the act of August 12, 1848, (9 U. S. St. at Large, 302,) provided as follows: "In every case of complaint as aforesaid, and of a hearing upon the return of the warrant of arrest, copies of the depositions upon which an original warrant in any such foreign country may have been granted, certified under the hand of the person or persons issuing such warrant, and attested upon the oath of the party producing them to be true copies of the original depositions, may be received in evidence of the criminality of the person so apprehended." This was a narrow provision. It allowed in evidence here, not any original depositions on which a warrant abroad issued, not any original depositions used abroad on the hearing of the charge after an arrest under the warrant, not any copies of the latter depositions, not such original warrant, not a copy of it, not any other original paper, or a copy thereof, but only copies of the depositions abroad on which the warrant abroad issued, and then it required such copies to be certified in a particular way, and to be attested by a particular oath.

Then followed the act of June 22, 1860, (12 U. S. St. at Large, 84,) which provided as follows: "In all cases where any depositions, warrants, or other papers, or copies thereof, shall be offered in evidence upon the hearing of an extradition case," under the second section of the act of 1848, "such depositions, warrants, and other papers, or copies thereof, shall be admitted and received for the purposes mentioned in the said section, if they shall be properly and legally authenticated, so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped, and the certificate of the principal diplomatic or consular officer of the United States, resident in such foreign country, shall be proof that any paper or other document so offered is authenticated in the manner required by this act."

It was held by this court, in *In re Heinrich*, 5 Blatchf. 414, that the act of 1860 enlarged the class of documentary evidence which might be adduced in support of the charge of criminality, by providing for the admission of *any* depositions, warrants, or other papers, or copies of the same, authenticated as specified in the act of 1860.

Then came the Revised Statutes, § 5271 which, as it stood until 1876, provided as follows: "In every case of complaint and of a hearing, upon the return of the warrant of arrest, copies of the depositions upon which an original warrant in any foreign country may have been granted, certified under the hand of the person issuing such warrant, and attested upon the oath of the party producing them to be true copies of the original depositions, may be received in evidence of the criminality of the person so apprehended, if they are authenticated in such manner as would entitle them to be reviewed for similar purposes by the tribunals of the foreign country from which the accused party escaped. The certificate of the principal diplomatic or consular officer of the United States, resident in such foreign country, shall be proof that any paper or other document so offered is authenticated in the manner required by this section."

In *In re Stupp*, 12 Blatchf. 501, before this court in 1875, it was held that section 5271 was in force in lieu of the act of 1848, in regard to copies of the depositions on which an original warrant of arrest was granted abroad, but that the act of 1860 was still in force, after the enactment of the Revised Statutes, in regard to the admission in evidence of all depositions, warrants, and other papers, or copies thereof, except the copies mentioned in section 5271. In consequence of as uggestion made in the case of Stupp that section 5271 had changed the law in regard to copies of the depositions on which an original warrant was issued abroad, instead of re-enacting it, and that the act of 1860 had not been re-enacted in the Revised Statutes, the act of June 19, 1876, (19 U. S. St. at Large, 597,) was passsd. That act amends section 5271 so as to read as follows:

"In every case of complaint and of a hearing, upon the re-

turn of a warrant of arrest, any depositions, warrants, or other papers offered in evidence shall be admitted and received for the purpose of such hearing, if they shall be properly and legally authenticated, so as to entitle them to be received as evidence of the criminality of the person so apprehended by the tribunals of the foreign country from which the accused party shall have escaped; and copies of any such depositions, warrants, or other papers shall, if authenticated according to the law of such foreign country, be in like manner received as evidence; and the certificate of the principal diplomatic or consular officers of the United States resident in such foreign country shall be proof that any such deposition, warrant, or other paper, or copy thereof, is authenticated in the manner required by this section."

The provisions of section 5271, as thus amended, do not appear to have been construed in any adjudged case. The section provides for two classes of documentary evidence— *First*, " depositions, warrants, or other papers," which means original depositions, original warrants, and original other papers—the depositions, warrants, and papers themselves, and not copies of them; *second*, copies of " any such depositions, warrants, or other papers." The first class, the originals, must be documents which would be entitled to be received in the tribunals of the foreign country as evidence of the criminality of the person, in respect to the offence charged against him as committed there, if the inquiry as to his criminality in respect of such offence were being had in such foreign tribunals, and such originals must be authenticated in such a proper and legal manner as would entitle them to be received as such evidence in such foreign tribunals. The second class, the copies, must be copies of original documents, which originals would be entitled to be received in the tribunals of the foreign country as evidence of the criminality of the person in respect to the offence charged against him, as committed there, if the inquiry as to his criminality in respect of said offence were being had in such foreign tribunals, and such copies must be " authenticated according to the law of such foreign country;" that is, authen-

ticated as true copies of such originals, the authentication being made according to the law of the foreign country.

When originals are offered they must be satisfactorily identified, and it must appear that they would be entitled to be received in the tribunals of the foreign country as evidence of such criminality, if the inquiry as to such criminality were being had in such foreign tribunals. When copies are offered it must appear that the originals of them would be entitled to be received in the tribunals of the foreign country as evidence of such criminality, if the inquiry as to such criminality were being had in such foreign tribunals, and it must appear that the copies are true copies of such originals, and the authentication that the copies are true copies must be made according to the law of the foreign country. There would seem to be a distinction industriously made, in the section, between originals and copies. If copies had been intended to be placed in the same category with originals, the words "or copies of any such depositions, warrants, or other papers" would naturally have been inserted after the words "or other papers," where the latter words first occur; and the portion of the section after the word "escaped," to and including the word "evidence," would have been omitted. The inference is that a different meaning may be looked for in the expression "properly and legally authenticated, so as to entitle them to be received as evidence of the criminality of the person so apprehended, by the tribunals of the foreign country from which the accused party shall have escaped," from that which is to be looked for in the expression "authenticated according to the law of such foreign country."

In Webster's Dictionary "authenticate" is defined thus: "To render authentic; to give authority to, by the proof, attestation, or formalities required by law, or sufficient to entitle to credit." In Worcester's Dictionary "authenticate" is defined thus: "To prove authentic." In Bouvier's Law Dictionary "authenticaton" is defined thus: "A proper or legal attestation. Acts done with the view of causing an instrument to be known and identified." In Burrill's Law Dictionary "authentication" is defined thus: "The act or

mode of giving legal authority to a statute, record, or other written instrument, or a certified copy thereof, so as to render it legally admissible in evidence." There does not appear to be any necessary or inherent meaning in the word "authenticated," as used in the section which requires the authentication to be in writing. The connection in which the word "authenticated" is used, in this or any other statute, may require the authentication to be in writing, and it may, in one place, mean only a written authentication, while in another place it may admit of an authentication not in writing.

The words "properly and legally authenticated, so as to entitle them to be received as evidence," etc., are properly to be construed as if the expression were "so properly and legally authenticated as to entitle them," etc.; that is, "so properly and legally authenticated that they would be entitled to be," etc. This authentication, in regard to original papers, may be made by oral proof given here. A witness may swear here to the verity and identity of the original; and, also, from his knowledge and experience, that they would be received in the tribunals of the foreign country as evidence of the criminality of the person in respect to the offence charged against him as committed there, if the inquiry as to such criminality were being had in such foreign tribunals. This will be sufficient, under the statute, when originals are offered. When copies are offered they must be authenticated according to the law of the foreign country. The provision that "the certificate of the principal diplomatic or consular officer of the United States, resident in such foreign country, shall be proof that any such deposition, warrant, or other paper, or copy thereof, is authenticated in the manner required by this section," provides for a mode of proof in regard to both originals and copies, and in regard to both of the authentications mentioned in the section. Such certificate, if in proper form, is absolute proof, whatever may be the tenor of the certificates of foreign officials to the same documents.

Practically, there may, ordinarily, be no adequate attainable means, other than such certificate, of proving that the authentication of the copies is according to the law of the for-

.eign country.   But there is nothing in the statute which necessarily excludes oral proof authenticating the copies, or oral proof as to what the law of the foreign country is as to such authentication, or oral proof that such oral authentication is according to the law of the foreign country.   There is nothing in the statute which makes such certificate of the United States diplomatic or consular officers the only competent proof that either the originals or the copies are authenticated in the manner required by the statute.   Whether the originals are offered, or copies are offered, it must appear that the originals would be received in the tribunals of the foreign country as evidence of the criminality of the person, in respect of the offence charged against him as committed there, if the inquiry as to such criminality were being had in such foreign tribunals.   Not only is the provision as to that effect specific as to the originals, but the provision in regard to copies is, twice, that they are to be copies of "such" originals; that is, copies of originals which would be received in the tribunals of the foreign country as such evidence.

The certificate of Mr. Lowell in this case cannot be held to be in compliance with the statute.   It certifies that the documents "are authenticated in the manner required by the statute of the United States."   It ought to certify, in respect to the original depositions offered, that they are properly and legally authenticated, so as to entitle them to be received as evidence of the criminality of the person apprehended by the tribunals of Great Britain; and it ought to certify, in respect to the copies offered, that the originals of which they are copies would be received as such evidence, and that such copies are authenticated according to the law of Great Britain.   Not only is the certificate of Mr. Lowell thus defective, but it clearly appears, from the authentications to which his certificates are appended, that the documents are not authenticated in the manner required by the statute of the United States.   In each of the three certificates of Mr. Lushington he certifies that the document "would be received as evidence of the criminality of a fugitive criminal from the United States charged before a tribunal in Great

Britain with an extradition crime under the extradition treaty as existing between that country and the United States."

The document must appear to be one which would be received as evidence of the criminality of Fowler, in respect to this offence, by the tribunals of Great Britain, if the inquiry were going on there in respect to the offence as committed there, and not a document which would be received by the tribunals of Great Britain as evidence of the criminality of a fugitive criminal from the United States charged before one of such tribunals with an extradition crime committed in the United States.

The original depositions of Jowett and Hustler purport to have been severally taken and sworn to at Bradford before W. Pollard, a justice of the peace. Under the foregoing views, the certificates to such depositions ought to be in, or amount in substance to, the following forms:

"I hereby certify that the signature of W. Pollard to the foregoing deposition is, to the best of my knowledge and belief, his signature, and the signature of a magistrate in England having authority to take the same, and that said deposition certified as within, by said Pollard, to the taking thereof before him, and authenticated by a minister of state, and sealed with his official seal, would be received in the tribunals of Great Britain as evidence of the criminality of George Fowler, *alias* R. Gray, named in said deposition, in respect of the offence charged against him as committed in Great Britain, namely, that he feloniously did forge, utter, and put off certain orders, purporting to be orders by William Jowett, for the payment of money, to-wit, bankers' checks, for the payment of the sum of £60, with intent thereby then and there to defraud, if the inquiry as to such criminality were being had in the tribunals of Great Britain.

·GODFREY LUSHINGTON,
"Assistant under Secretary of State for the Home
[Seal.] Department.
"*Whitehall, 2d October, 1880.*"

"I certify that I believe the above signature, 'Godfrey Lushington,' to be the handwriting of Godfrey Lushington, Esq., D. C. L., assistant under secretary of state for the home department.

"JULIAN PAUNCEFOTE,

[Seal.] "Assistant Secretary of State for Foreign Affairs.
"*Foreign Office, 7th October, 1880.*"

"I certify that I believe the above signature, 'Julian Pauncefote,' to be the handwriting of Sir Julian Pauncefote, one of the assistant under secretaries of state for foreign affairs; and that the foregoing documents are properly and legally authenticated, so as to entitle them to be received in the tribunals of Great Britain as evidence of the criminality of George Fowler, *alias* R. Gray, named therein, in respect of the offence named therein, charged against him as committed in Great Britain, if the inquiry as to such criminality were being had in the tribunals of Great Britain. In witness whereof, I have subscribed my name and caused the seal of this legation to be affixed, this eighth day of October, 1880.

"J. R. LOWELL,

"Envoy Extraordinary and Minister Plenipotentiary
[Seal.] of the United States of America.
"*Legation of the United States, London, October 8, 1880.*"

In regard to the copy of the information, in addition to the certificate of Angus Holden, justice of the peace, that it is a true copy of the original information, the certificates to such copy ought to be in, or amount in substance to, the following forms: "I hereby certify that the signature of Angus Holden to the foregoing copy information is, to the best of my knowledge and belief, his signature, and the signature of a magistrate in England having authority to take such information, and that the original of said information would be received in the tribunals of Great Britain as evidence of the criminality of George Fowler, *alias* R. Gray, named therein, in respect of the offence charged against him as committed in Great Britain, namely, that he feloniously did forge, utter, and put

off certain orders, purporting to be orders by William Jowett, for the payment of money, to-wit, bankers' checks for the payment of the sum of £60, with intent thereby then and there to defraud, if the inquiry as to such criminality were being had in the tribunals of Great Britain, and that said copy information is authenticated according to the laws of Great Britain. "GODFREY LUSHINGTON,

"Assistant Under Secretary of State for the Home [Seal.] Department.
*Whitehall, 2d October, 1880.*"

"I certify that I believe the above signature, 'Godfrey Lushington,' to be the handwriting of Godfrey Lushington, Esq., assistant under secretary of state for the home department. T. V. LISTER,
[Seal.] "Assistant Under Secretary of State.
*"Foreign Office, 2d October, 1880."*

"I certify that I believe the above signature, 'T. V. Lister,' to be the handwriting of T. V. Lister, Esq., one of the assistant under secretaries of state for foreign affairs, and that the original of the foregoing copy information would be received in the tribunals of Great Britain as evidence of the criminality of George Fowler, *alias* R. Gray, named therein, in respect of the offence charged against him, as committed in Great Britain, namely, that he feloniously did forge, utter, and put off certain orders, purporting to be orders by William Jowett, for the payment of money, to-wit, bankers' checks for the payment of the sum of £60, with intent thereby then and there to defraud, if the inquiry as to such criminality were being had in the tribunals of Great Britain, and that the foregoing documents are authenticated according to the law of Great Britain. In witness whereof, I have subscribed my name, and caused the seal of this legation to be affixed thereto, this seventh day of October, 1880.

"J. R. LOWELL,

"Envoy Extraordinary and Minister Plenipotentiary [Seal.] of the United States of America.
*"Legation of the United States, London, October 7, 1880."*

The certificate to the copy warrant should be in like form, *mutatis mutandis.*

It follows, from the foregoing considerations, that neither the depositions nor the copies of the information or of the warrant were admissible in evidence by virtue of the certificates accompanying them. In regard to the copy information, Mr. Dobson, a detective officer attached to the Bradford police, who came to the United States to take Fowler back to England, testifies that such copy is a copy of the original information; that he saw the original and was present when it was made, and saw Jowett sign it in the presence of Holden; that Holden is a justice of the peace at Bradford, and acting as such; and that the signature to the copy is the signature of Holden. Mr. Dobson also testifies that the copy warrant is a copy of the original warrant; that he was present when the original was signed, and that it was issued by a justice of the peace at Bradford, and that he has the original in his possession. But there is no evidence that the authentication of the copies is according to the law of Great Britain. The relator objected before the commissioner to the admission in evidence of the copies, but they were admitted on the evidence of Mr. Dobson. They were not competent evidence.

A different case exists as to the depositions of Jowett and Hustler. The originals were offered. Mr. Dobson testifies that W. Pollard, before whom they were sworn and taken, is a justice of the peace for Bradford; that he, Dobson, was present when the depositions were taken; that they are the originals; that they were sworn to by Jowett and Hustler severally; that two checks were produced to Jowett at the time, to which he referred in his deposition, as originals, (the witness producing copies of them, compared by himself, which are part of the case;) and that the indorsements were on the checks when they were presented to Jowett in court. Mr. Dobson also testifies that he has been attached for 12 years to the police force of Bradford; that he is familiar with the ordinary course of criminal procedure in England for the apprehension of offenders; that the said depositions would be used and received in evidence before the magistrates at Brad-

ford, the same as they are sought to be introduced here, after the arrest; that the magistrate in England takes a written deposition of the complainant and witnesses in the presence of the accused, without counsel for the accused, the accused being allowed to question the witnesses if he feels disposed, if he has no counsel; that such depositions are taken in writing, and admitted and made part of the procedure; that he, Dobson, has often conducted criminal prosecutions himself, acting in place of the chief constable, who is the chief prosecutor; that he considers himself perfectly familiar with the course of criminal procedure in England; and that these proceedings are according to the practice there, and these depositions would be received in England. On this evidence the original depositions were properly admissible in evidence.

Upon the contents of said depositions, and on the oral testimony given here before the commissioner, there was legal and competent evidence of facts before him for him to consider in making up his decision as to the criminality of the accused. On all the points bearing on the criminality of the relator, testimony legally admissible contains materials for a decision by the commissioner on the question of fact as to whether there was before him such evidence of criminality as the treaty requires. The commissioner having decided such question of fact, his decision cannot be reviewed by this court on *habeas corpus*. *In re Stupp*, 12 Blatchf. C. C. R. 501; *In re Vandervelpen*, 14 Blatchf. C. C. R. 137; *In re Wiegand*, Id. 370; *In re Wahl*, 15 Blatchf. C. C. R. 334. The writs must be discharged and the relator be remanded to the custody of the marshal.