## In re McPhun.

(*Circuit Court, S. D. New York.* March 8, 1887.)

1. EXTRADITION—TREATY WITH GREAT BRITAIN—PROOF OF CRIMINALITY—COPIES OF DEPOSITION—ACT OF AUGUST 3, 1882, (22 ST. AT LARGE, 216.)

   Under the act of August 3, 1882, depositions, and copies thereof, require the same kind of authentication to entitle them to be received in evidence in proof of criminalty. The words "similar purposes" mean "proof of criminality;" and, whether the original or a copy is offered, it is not admissible under the act of 1882, unless it would be receivable in the foreign country in proof of criminality.

2. SAME—AUTHENTICATION—CONSUL'S CERTIFICATE.

   The consul's certificate, if conformable to the act of congress, is absolute proof that the papers certified are receivable in proof of criminality abroad, whether they are originals or copies. If this certificate is not conformable to the act of congress, the papers, whether originals or copies, may still be received upon proof of the fact that by the foreign law the papers presented would be competent evidence in proof of the criminality of the accused in the country from which he escaped.

3. SAME—ST. 6 & 7 VICT.—DEFECTIVE CERTIFICATE.

   The relator being arrested in New York upon a charge of forgery committed at Calcutta, British India, the only proofs of criminality submitted were copies of depositions taken before the criminal magistrate at Calcutta, attested by his clerk and the seal of his court. The consul's certificate stated that the depositions were so authenticated as "to enable them to be used in evidence, and as proof that the originals were duly received in evidence of the criminality of the accused." *Held* insufficient, under the act of congress; and, no other proof being made that copies so attested could be received in evidence as proof of criminality within the British dominions, the copies of depositions were held improperly received.

4. SAME—ENGLISH STATUTES.

   Under the statute of 6 & 7 Vict., upon similar proceedings for the removal of the accused from London to Calcutta, proof of criminality would be required, and copies of the original depositions would be receivable for that purpose, if certified under the hand of the magistrate who issued the warrant, and attested under the oath of the party producing them. The copies in this case having no such certificate from the magistrate, *held*, that the papers were defective under the first clause of the act of 1882, as well as under the second, and that the prisoner must be discharged.

*Habeas Corpus.*

F. F. *Marbury* and *Charles Fox*, for the British Government.

E. R. *Johnes*, John R. *Abney*, and J. T. *Hoffman*, for petitioner.

BROWN, J. Upon the complaint of the consul general of Great Britain at this port, the relator was arrested upon a charge of forgery, alleged to have been committed at Calcutta in April, 1883, and brought before Commissioner Odborn in proceedings for extradition under article 10 of the treaty of August 9, 1842. Having been held by the commissioner, the relator has been brought before the court on *habeas corpus*, together with the proceedings under a writ of *certiorari.*

Article 10 of the treaty with Great Britain (8 St. at Large, 576) provides that the persons charged are to be delivered up, "provided that this shall only be done upon such evidence of criminality as, according to the laws of the place where the fugitive or person so charged shall be

found, would justify his apprehension and commitment for trial if the crime or offense had there been committed;" that the magistrate shall have power to issue a warrant that the person charged may be brought before such magistrate, " to the end that the evidence of criminality may be heard .and considered; and if, on such hearing, the evidence be deemed sufficient to sustain the charge," that fact is to be certified, and the person delivered up. Section 5270 of the Revised Statutes provides that such proceedings may be had before commissioners, and uses nearly the language of the treaty. The hearing before the commissioner involves essentially two things,—the identity of the prisoner, and the sufficiency of the evidence of criminality.

The identity of the prisoner is in this case established by the testimony of the officer who came from Calcutta with the warrant, and with the other papers designed to sustain the charge. These papers embrace the original warrant, dated August 11, 1886, signed by the chief presidency magistrate of Calcutta, and bearing the seal of that court. The only evidence of criminality, however, is found in the copies of numerous depositions which were taken before the presidency magistrate at Calcutta in September, 1884, and in August, 1886. No originals are produced. The only question necessary for me to consider is the competency of these copies as evidence of criminality.

By the very terms of the treaty just quoted, the evidence of criminality must be such as, according to the law of the place where the fugitive is found, would justify his apprehension and commitment. The competency of the evidence must therefore be judged wholly according to our own law, (1 Greenl. Ev. § 522;) and this must be either according to such rules of evidence as congress may have prescribed, or, in the absence of such provisions, and in so far as they may be inapplicable, according to the rules of the common law.

It is not contended that by the common-law rules of evidence mere copies of *ex parte* depositions, taken before a foreign criminal magistrate, though attested by the clerk of his court, would here be competent evidence of criminality. BETTS, J., in the *Case of Kaine*, 10 N. Y. Leg. Obs. 257, 268, says expressly that such copies, though they were there attested by the clerk and by the oath of the witness producing them, were "not competent proof at common law," though he held them sufficient under the act of 1848. See, also, *In re Kaine*, 14 How. 103, 115, 116, 144, 146, and 3 Blatchf. 1. Where the ultimate fact to be proved is merely the existence of a foreign record, such, for instance, as the fact of a foreign judgment in a suit brought upon that judgment, a properly attested or authenticated copy is admissible. Greenl. Ev. 514, 527, 538, 552. Here the ultimate fact is the criminality of the accused. The original depositions are only evidence tending to show criminality, and the attested copies presented are only evidence of evidence.

The statutes of a foreign country relating to the sufficiency of evidence in extradition proceedings within its own dominions, such as the statutes of 33 & 34 Vict. *c.* 52, §§ 14, 15, (L. R. 5 St. 292,) have no relevancy, except in so far as the laws of our own country may make them

relevant; because by the treaty itself the primary question is not what is competent evidence abroad, but what is competent evidence here. *In re Fowler*, 18 Blatchf. 430, 439, 4 Fed. Rep. 303. The statutes of 33 and 34 Victoria relate to copies of foreign depositions only, not to copies of depositions taken within the British dominions.

Various provisions have been enacted by congress, from time to time, touching the papers and documents, or copies thereof, which may be received as evidence of criminality. As respects copies, it was provided by the act of August 12, 1848, (9 St. at Large, 302, § 2,) that "copies of the depositions upon which an original warrant in any such foreign country may have been granted, certified under the hand of the person or persons issuing such warrant, and attested upon the oath of the party producing them to be true copies of the original depositions, may be received in evidence of the criminality of the person so apprehended." By the act of June 22, 1860, (12 St. at Large, 84,) it was provided that any "depositions, warrants, and other papers, or copies thereof, shall be admitted for the purposes mentioned in said section, [*i. e.*, as evidence of criminality,] if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes [*i. e.*, as evidence of criminality] by the tribunals of the foreign country from which the accused party shall have escaped." By the act of June 19, 1876, (19 St. at Large, 59,) it was provided (1) that any "depositions, warrants, or other papers shall be admitted if properly and legally authenticated so as to entitle them to be received as evidence of the criminality of the person so apprehended by the tribunals of the foreign country from which he escaped;" and (2) that "copies of any such depositions, warrants, or other papers shall, if authenticated according to the law of such foreign country, be in like manner received as evidence." By section 5 of the act of August 3, 1882, (22 St. at Large, 216,) the act of 1860 is in substance restored, and it is enacted that any "depositions, warrants, or other papers, or copies thereof, shall be received and admitted as evidence on such hearing, for all the purposes of such hearing, if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped; and the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that any deposition, warrant, or other paper, or copies thereof, so offered, are authenticated in the manner required by this act." There is no other provision for the admission of copies. By section 6 of the act last named, prior statutes, so far as inconsistent with that act, were repealed.

The term "similar purposes" must receive the same construction in the last-named act as in prior acts. By its context it naturally refers to the words in the previous line, "for all the purposes of such hearing;" that is, to proof of criminality, which is the purpose of the hearing. The same construction had been given to similar words in prior statutes. *In re Farez*, 7 Blatchf. 345, 353; *In re Henrich*, 5 Blatchf. 414, 425. The act of 1876 made different provisions as respects original depositions,

and *copies* of such depositions. This distinction is pointed out and commented upon by Mr. Justice BLATCHFORD in the *Case of Fowler*, 18 Blatchf. 430, 435, 4 Fed. Rep. 303. Under that act, in order to make use of copies, there must first be original depositions, which by the foreign law would be proof of criminality, and then the copies offered in evidence were required only to be "authenticated according to the law of such foreign country." The act of 1882, in repealing former statutes inconsistent with it, and in placing copies upon the same footing as originals, has required the same conditions as respects copies that it requires as respects originals; namely, that whichever be offered, whether the original or a copy, it must be a paper "legally authenticated so as to entitle it to be received for similar purposes [that is, as evidence of criminality] by the tribunals of the foreign country." In this respect the act of 1882 is precisely similar to that of June 22, 1860, above referred to.

The *Case of Henrich*, 5 Blatchf. 414, 425, arose under the act of 1860, and was very carefully considered. The opinion delivered by SHIPMAN, J., was concurred in by Mr. Justice NELSON and by BLATCHFORD, J. It was there said, (page 425:)

"Each piece of the documentary evidence offered by the agents of the foreign government in support of the charge of criminality should be accompanied by a certificate of the principal diplomatic or consular officer of the United States resident in the foreign country from which the fugitive shall have escaped, stating clearly that it is properly and legally authenticated, so as to entitle it to be received in evidence in support of the same criminal charge by the tribunals of such foreign country."

Under none of the previous statutes could the copies of the depositions in the present case be admitted,.for the reason that these copies are not "certified under the hand of the person issuing such warrant,"—that is, under the hand of the presidency magistrate,—even if these provisions could be deemed now in force. As attested copies are not competent merely upon the common-law rules of evidence, the case as against the accused must stand upon the provisions of section 5 of the act of August 3, 1882. Under that act, as under the act of 1860, the prosecution may rely upon the certificate of the diplomatic or consular officer, which, if in conformity with the statute, is of itself absolute proof that the papers so certified are receivable in the foreign country in proof of criminality. But, if that certificate be not conformable to the act of congress, resort may then be had under the former part of the fifth section to any oral or other proof that is competent to show that the copies presented are so authenticated as to entitle them to be received as evidence of criminality in a proceeding for commitment or transportation for trial in the foreign country from which the accused party shall have escaped. *In re Fowler*, 18 Blatchf. 430, 437, 438, 4 Fed. Rep. 303; *In re Wadge*, 15 Fed. Rep. 864, affirmed on appeal, 16 Fed. Rep. 332, 21 Blatchf. 300. The foreign law in the latter case must be proved as a fact. No oral proof of this kind has been submitted; nor, so far as the general law of Great Britain or the local British law of India has been ascertained by reference to books, has it been found that mere copies of original depositions taken before a.

magistrate, and attested by the clerk of his court, would be, anywhere within the British dominions, competent proof against the accused for the purposes of commitment.

If, for instance, the prisoner had been found in London, and proceedings were had there upon this original warrant from Calcutta, for the purpose of his commitment and transportation to Calcutta for trial, it is provided by the statute of 6 & 7 Vict. that, upon such an arrest in London, and on his being brought before a criminal magistrate there, "such evidence of criminality must be there produced as would justify committal if the offense had been there committed," (section 3:) "provided, always, that in every such case copies of the depositions upon which the original warrant was granted, certified under the hand of the person or persons issuing such warrant, and attested upon the oath of the party producing them to be true copies of the original depositions, may be received in evidence of the criminality of the person so apprehended," (section 4.) Our statute of 1848 above cited was manifestly framed upon the statute of 6 & 7 Vict. The language is nearly identical in each. From this it is clear that, unless there be some later statutes that I have not found, the attested copies in this case could not have been received if this proceeding had been in London; nor could the prisoner have been committed for transportation, because the attested copies are not certified under the hand of the presidency magistrate who issued the original warrant.

The case must stand, therefore, upon the certificate of the consul alone. That certificate is very full in many respects. All that relates to the certified copies, however, is in the following words:

"And I certify that all and every the certified copies hereunto attached are properly and legally authenticated and certified according to the law in force in British India, so as to enable them to be used in evidence and as proof that the originals were duly received in evidence by the said GILBERT STUART HENDERSON, Esquire, and the said FREDERICK JOHN MARSDEN, Esquire, respectively in proof of the criminality of the said Robert Bruce McPhun named therein, in respect of the said charges of forgery, uttering, and cheating."

Had the foregoing certificate omitted all that follows the words "used in evidence," and added only "for similar purposes," that, with the context, must have been held sufficient, as in the *Case of Wadge*, *supra*. But, upon repeated consideration, I find myself unable to construe what follows the words "used in evidence" as intended otherwise than as a definition of the purposes for which the copies might be received, namely, as evidence that certain originals were on file, which originals had been duly received in evidence by the magistrates at Calcutta as proof of criminality. That is manifestly quite a different thing from what our statute requires. The certificate amounts to no more than what would be the force of the copies as evidence at common law; namely, that such depositions existed at Calcutta, which might be used as evidence as against the parties who made the depositions, perhaps, though not competent evidence of the criminality of the accused. 1 Greenl. Ev. 533, 538, 539. The

evident meaning of the act of 1882 is that whatever papers are so authenticated as to be receivable in evidence in the foreign country as proof of the criminality of the accused may be received in evidence here; and that our consul's certificate that they are so authenticated as to be entitled to be used for that purpose there shall be conclusive proof on that point.   Proof that there is competent and legal evidence on file elsewhere is not the same thing as proof of criminality here.   If these copy depositions, attested as these are by the clerk, are competent evidence of criminality as against the accused in any part of the British dominions, a certificate to that effect by the general consular officer is sufficient. The elaborate form of the consul's certificate in the present case rather supports the inference that copies thus attested by the clerk of the foreign court could not be used as in themselves evidence of criminality. Had the consul's certificate ended with the words "used in evidence," it would have been clearly insufficient.   What follows those words manifestly does not comport with the meaning of the statute, but is a very different qualification.

It cannot be justly claimed that there is anything unreasonable in the act of congress, or in the construction here given to the certificate of the consul, which requires, as a condition of the receipt of copies of depositions as evidence of criminality here, that the copies should be legally receivable in evidence as proof of criminality within the kingdom from which the accused has escaped.   If such copies were receivable here, although they were not competent evidence of criminality in the foreign country, the effect would be that persons would be committed and extradited to distant lands upon proof which was there incompetent.   Nor can there be any practical difficulty in obtaining the magistrate's certificate to original depositions taken by him; and then such copies, so attested and certified, could be received here on the proper certificate of the consul, or on proof of the British law as found in the 6 & 7 Vict., above quoted.

The act of congress of 1876 may possibly have permitted for a time the introduction of copies on less proof, because the authentication required as to copies did not expressly require that the copies should be competent evidence abroad; but the act of 1882, as stated above, has placed both originals and copies under the same restrictions, and has provided, in effect, that they are not to be receivable here unless they would be receivable in the foreign country as proof of criminality, or are certified to have that effect.

There has long been a practice, where an original warrant, upon competent original proof, has been issued by the magistrate where the offense was committed, to transmit the warrant to some other district where the accused may be found, and to procure his arrest there under the original warrant upon the indorsement and allowance thereof by the local magistrate, under which the prisoner is thereupon removed to the place of trial.   In such cases there may or may not be further inquiry concerning the criminality of the accused in the place where he is found and arrested.   See 1 Chit. Crim. Law, 75, 82, 88, 89.   Various stat-

utes of Geo. II. and Geo. III. expressly authorized this practice. See 45 Geo. III. *c.* 92, 48; Id. *c.* 58; 2 Hale, P. C. 285. The statute of 6 & 7 Vict., above quoted, required proof of criminality, and admitted copies of depositions under conditions not in this case complied with. Such proceedings rest upon statute law. Whatever may be the practice at present as respects British India, nothing appears that has relevancy to the present case. The treaty itself, as I have said, requires proof of criminality here. As I am obliged to hold that the proof produced in this case was not competent, either according to the law of congress, or according to the common law, the commitment cannot be sustained.

If there were reasonable grounds to suppose that the imperfection of the consul's certificate in this case had arisen from inadvertence, or from a misunderstanding of the intention of the act of congress that the copies must be certified to be competent evidence of criminality, the court would remit the proceedings to the commissioner for a further hearing, if it also appeared that by the general English law, or by that of British India, copies of depositions attested in this manner were in fact competent proof of criminality; for other proof of this fact might supply the defects of the consul's certificate. But though inquiries have been made by the court from the first concerning the British law in this respect, nothing has been cited from the text-books, statutes, or reports that goes to show that there is any such law or practice within the British dominions as would make these copies evidence of criminality. The prisoner must therefore be discharged.