# U. S. CIRCUIT COURT.

## *In re* FRANCOIS FAREZ, an alleged fugitive from justice.

On Habeas Corpus.—*Extradition.*

1. In this district, extradition proceedings must be conducted according to the laws of this state, in such particulars as are not specially regulated by U. S. statute, *and it is error for a court to reject the testimony of a prisoner on his own behalf, and in such a case, the proceedings before him must be set aside, the examination commenced de novo and the prisoner discharged from custody under the commissioner's final commitment.*

2. Requisites of complaint in extradition.

(*a.*) The averments of the complaint need only be such as to enable the accused to understand precisely the nature of the charge against him.

(*b.*) Proceedings under extradition treaties may be instituted here, although no warrant against the accused has been issued abroad, and an allegation that such warrant has been issued is immaterial.

(*c.*) Under the Swiss Treaty, no allegation that the crime charged is punishable *here* with infamous punishment, is required, as it is sufficient that such crime should be subject to infamous punishment in the country where it was committed.

3. That the demand for extradition has been made by the supreme power of the demanding country, is sufficiently attested by the production of the president's mandate.

4. Under a charge of forgery, it is sufficient to produce certified copies of the papers alleged to have been forged, properly authenticated under the acts of congress.

5. Various papers, making part of one proceeding, need not be *separately* authenticated by the minister.

6. Under the treaty with Switzerland, it is sufficient to prove that the crime charged is subject to infamous punishment by the laws of the *canton of Berne.*

*Southern District of New York, June,* 1870.

HENRY D. LAPAUGH, *attorney, and*
SAMUEL E. LYON, *of counsel for Swiss government.*
FREDERIC R. COUDERT, *for the prisoner.*

BLATCHFORD, J.—In this case a writ of *habeas corpus* and a writ of *certiorari* have been issued to review the pro-

ceedings which have taken place before KENNETH G. WHITE, Esq., a United States commissioner, in reference to the application of the authorities of the Swiss confederation for the extradition of the petitioner, Francois Farez. The proceedings which took place before the commissioner have been brought before me, and the questions involved have been fully discussed by the respective counsel.

It appears by the record that the proceedings went on before commissioner WHITE by consent, he not having been the commissioner who issued the warrant of arrest, and that before the matter was proceeded with at all before commissioner WHITE on the part of the prosecuting party, a motion was made before the said commissioner by the accused, to dismiss the complaint and warrant on several grounds.

The first ground was that the complaint was insufficient, because it did not contain any thing more than an official statement on the part of the deponent, as consul, &c., that the prisoner was charged with the crimes stated, and did not contain the express personal averment to that effect required by law. I do not think there is any thing in that objection. Necessarily, in carrying out the provisions of extradition treaties, the complaint must, in many cases, be made by the representative of the foreign government; and all that can be required is that it shall be sufficiently specific, clear, and distinct in its averments to enable the party accused to understand precisely what it is he is charged with. The complaint made in this case by the Swiss consul in his official capacity, he not pretending to any personal knowledge of the matters set forth in the complaint, contains all the necessary and proper averments to enable the party accused to understand what offenses he is charged with having committed; and there is no force in the objection that it does not contain any thing but an official statement.

The second objection was that it did not appear by the complaint that by what magistrate abroad the warrant against the prisoner had been issued, so as to enable the commissioner

to decide whether such magistrate had authority in the premises. The complaint states that a warrant of arrest against the prisoner, on account of the crimes specified in the complaint, has been issued by the proper and competent judicial authority for the purpose in the jurisdiction of the Swiss confederation. If the averment in question were a material averment, undoubtedly the one found in this complaint would be insufficient. But it is not a necessary preliminary step to an investigation under an extradition treaty, that a warrant shall have been issued abroad. Therefore, the averment in question is surplussage.

The third objection was that it did not appear by the warrant that the commissioner was appointed by the circuit court of the United States for the purpose of issuing the same. That objection was not urged on the hearing before me. The point involved in the objection is, that the warrant does not show that the commissioner was appointed by the circuit court to issue this particular warrant. That is true; but it is not necessary that it should so appear. It does appear, on the face of the warrant, that he was appointed to issue warrants in all cases of extradition falling under the provisions of the acts of congress of August 12, 1848, and June 22, 1860. The act of 1848, (9 *U. S. Stat. at Large*, 302,) applies to any treaty or convention for extradition between the government of the United States and any foreign government and gives the power to issue a warrant to any commissioner authorized so to do by any of the courts of the United States. This warrant avers that the commissioner who issues it is a commissioner appointed by the circuit court of the United States, for the southern district of New York, and is a magistrate, and is a commissioner specially appointed to execute the act of August 12, 1848, and the act of June 22, 1860. That is sufficient.

The fourth objection was that the complaint did not allege that the crime in question was punishable by infamous punishment in the United States, and that it was

necessary that the crime should be so punishable to bring it under the treaty. The averment of the complaint in that respect is, that the crimes alleged are contrary to the laws of the Swiss confederation, and are by such laws subject to infamous punishment, and to punishment by imprisonment in the state prison. There is no averment that they are subject to infamous punishment by the laws of the United States. The convention for extradition between the United States and Switzerland, (11 *U. S. Stat. at Large*, 593, 594,) says, that persons shall be delivered up according to the provisions of the convention, who shall be charged with the crimes therein specified, "when these crimes are subject to infamous punishment." My interpretation of this provision is, that when one of the specified crimes has been committed, and the extradition of the person who has committed it is demanded, it is sufficient if such crime is subject to infamous punishment in the country where it is committed, without its being necessary that it should be also subject to infamous punishment in the country from which the extradition of such person is demanded. The complaint is, therefore, sufficient in this respect, without regard to the question whether it is necessary to make any averment of the kind in the complaint, which perhaps may be doubtful.

The fifth objection was, that there was no evidence that the supreme power of the Swiss confederation, had made a demand on the goverment of the United States for the extradition of the prisoner. That objection was cured by the production afterwards of the mandate from the president of the United States, which sufficiently showed that a demand for the extradition of the prisoner, had been made by the only authority which the government of the United States is called upon to recognize as representing the Swiss confederation.

The objections referred to were all of them properly overruled by the commissioner. He also properly over-

ruled a motion, based upon those objections, to dismiss the proceedings. Then the case on the part of the prosecution was commenced, and the counsel for the prisoner claimed the right to cross-examine the complainant before any other evidence should be offered on the part of the prosecution. That claim was overruled by the commissioner, and an exception to such ruling was taken. I see no objection whatever to that ruling. The prisoner had the right to call the Swiss consul, who was the complainant, as a witness, and examine him at any stage of the case, but he could not properly claim the right to cross-examine him before any other evidence was offered, when it appeared on the face of the complaint that the consul did not pretend to have any personal knowledge of the matters stated in the complaint.

Then the complaint, and the sworn depositions attached thereto, made before the judicial authorities in Switzerland, were offered in evidence before the commissioner. The counsel for the prisoner objected to their admission in evidence on several grounds. The first, was that the mandate issued from the state department had not been produced and put in evidence. The mandate was then produced by the counsel for the prosecution, and given to the commissioner, and it is now before me. The return of the commissioner to the writ of *certiorari* does not state that the mandate was put in evidence, but as the objection taken was, that it had not been put in evidence, and as it was produced and given to the commissioner it must be intended that it was put in evidence for all practical purposes. The record, does not show that any objection was taken to the competency of the mandate as evidence, after it had so been given to the commissioner; and I regard the mandate as sufficient in form.

The second objection taken to the admissibility of the papers from Switzerland was, that, the charge being forgery, the alleged forged papers ought to be produced before any

other evidence could be introduced. That objection is not
well taken. The evident intention of congress in the act
of June 22, 1860, (12 *U. S. Stat. at Large*, 84,) as was held
by Mr. Justice NELSON, Judge SHIPMAN, and myself, in the
case of *In re Henrich* (5 *Blatchf. C. C. R.*, 414,) was to
enlarge the field of evidence in these cases. As was stated
by Judge SHIPMAN in his opinion in that case: "The act
of June 22, 1860, enlarges the class of documentary evi-
dence which may be adduced in support of the charge of
criminality." He further said that, "in regard to the
depositions upon which the foreign warrant of arrest may
have issued, embraced in the second section of the act of
August, 1848, it provides for the admission of *any* deposi-
tions, warrants, or other papers, or copies of the same,
which are so authenticated that the tribunals of the country
where the offense was committed would receive them for
the same purpose" It is also quite apparent that when
these depositions, authenticated in such a manner as to
entitle them to be received for similar purposes by the
tribunals of Switzerland, are received in evidence here on
the question of the criminality of the prisoner, as they are
entitled to be under the act of 1860, the judicial authorities
here are bound to give to them the same effect as if the
witnesses themselves were personally present, testifying
here. In the present case it appears, by the papers from
Switzerland, that on the occasion of the giving of testimony
by the witnesses whose depositions were taken, copies of
which are produced as evidence, the alleged forged instru-
ments were produced and shown to them, and they examined
them and examined their signatures to them, and stated that
they did not know such signatures. On this state of facts,
it is quite clear that there is nothing in the objection taken,
because the depositions produced are the depositions of
witnesses who had the alleged forged papers before them at
the time of giving such depositions. The case stands now
precisely as if the witnesses had been examined in person

before the commissioner, and the alleged forged papers had been produced to them before him.

The third objection was that the charge set forth in the complaint was subsequent in date to that set forth in the mandate of the president, and that, therefore, the charge before the commissioner was another, and a different one from that set forth in such mandate. There is no force in this objection. The mandate was issued on the 9th of December, 1869. It alleges that the political agent and consul-general of Switzerland has made application to the government of the United States, for the arrest of Francois Farez, charged with the crime of forgery and embezzlement, and alleged to be a fugitive from the justice of Switzerland, and believed to be within the jurisdiction of the United States. All that this language implies is, that before the 9th of December, 1869, Farez had committed the crime of forgery and embezzlement in Switzzerland, and had fled from there to the United States, The evidence that was placed before the president is something with which this court has nothing to do. This court cannot pass, in any manner whatever, upon the discharge of the executive functions of the president. It is sufficient that the president, as is evidenced by a paper coming through the recognized authority of the government, the secretary of state, has come to the conclusion that satisfactory evidence has been produced to him, that Farez is charged with this crime. This court can in no manner examine into the question as to the evidence on which the president came to that conclusion. The papers put in evidence before the commissioner show that, although the complaints of the persons who made the charge before the magistrate in Switzerland, were made on the 14th of December, 1869, and the magistrate proceeded to make further investigations in regard to the matter on the 21st of January, 1870, yet the offenses to which all the papers relate were committed, if at all, when the forged instruments were passed

away by Farez, namely, in August, 1869. Therefore, in no proper sense does the complaint set forth offenses subsequent in the date of their commission to those set forth in the mandate. The complaint sets forth offenses committed at some time in August, 1869, and the mandate of the 9th of December, 1869, only refers to an offense previously committed. The mandate is indeed very general, but the complaint which was immediately put before the officer who issued the warrant is specific and clear, and there is nothing to show that the mandate and the complaint refer to different offenses. The mandate authorizes an arrest for forgery, and the offense of forgery is the offense set forth in the complaint and in the warrant of arrest.

The fourth objection to the documents was that they were not properly legalized. That objection is very general. It does not state wherein the legalization was imperfect, but I have considered every question raised upon the legality of the papers.

It was held in the case of *In re Henrich*, that papers of the character of those here presented are admissible under the act of 1860, when properly authenticated, and that that act intends to enlarge the class of documentary evidence which may be adduced in support of the charge of criminality, and, in addition to the depositions on which a foreign warrant of arrest may have issued, provides for the admission of any depositions, warrant, or other papers or copies of the same, which are authenticated in a certain manner. Therefore, it is no objection to these papers that they do not appear to have been papers on which a warrant of arrest was issued abroad against the prisoner. The only question is as to whether the papers are properly authenticated.

The act of 1860, provides that the certificate of the principal diplomatic or consular officer of the United States resident in Switzerland, shall be proof that any paper or other document offered in evidence is authenticated in the

manner required by that act. The diplomatic or consular officer must state that the papers are authenticated, so as to entitle them to be received for similar purposes by the tribunals of Switzerland—that is, entitled to be received by the tribunals of Switzerland for similar purposes for which the papers mentioned in the second section of the act of 1848, are to be received, namely, for the purpose of being evidence of the criminality of the person apprehended.

The certificate in this case of the minister resident of the United States, in Switzerland, Mr. Rublee, dated the 5th of February, 1870, certifies that "the foregoing copies of the warrant, depositions, and other papers are legally and properly authenticated so as to entitle them to be received for similar purposes by the tribunals of the Swiss confederation, and to be received by the said tribunals for the purposes and similar purposes mentioned in the second section of the act of congress, entitled ' an act for giving effect to certain treaty stipulations between this and foreign governments, for the apprehension and delivering up of certain offenders,' aproved August 12, 1848." This certificate follows the language of the act of 1860. The same objection that is made to this mode of certification, was made to the certificate in the case of *In re Henrich.* The objection was there taken that the certificate of the minister did not state explicitly that the paper was admissible by the tribunals of the foreign country in support of the charge of criminality, or as evidence of the criminality of the prisoner. From the report of that case it appears that the certificate stated, as this one does, that the paper was receivable for "similar purposes." On that subject the court, in that case, after referring to the act of 1848, as stating that the purposes for which the documentary evidence is made admissible are to support the charge of criminality, says, that the act of 1860, declares that the documentary evidence which it makes admissible, is to be received for the purposes men-

tioned in the second section of the act of 1848—that is, as evidence of the criminality of the prisoner. It further says: " The meaning of the certificate is perfectly obvious, when considered in reference to its object, and in connection with the certificates of the Prussian officials. The latter declare it to be a valid piece of evidence touching the charge of criminalty, which it embraces and sets forth with particularity." In the present case, the certificate of the minister refers to the papers as being legally and properly authen ticated, so as to entitle them to be received for similar purposes by the tribunals of the Swiss confederation. The authentication which is thus referred to by the minister is, a certificate made by the chancellor of the Swiss confederation. He certifies to the signature of the chief of the state chancery of the canton of Berne, in Switzerland, and to the authenticity of the seal of such state chancery. He adds: " I, moreover, certify that Mr. Justin Brossard, president of the tribunal of the district of the Franches Montagnes, canton of Berne, Switzerland, is, according to the conditions of the actual legislation of that canton of Switzerland, competent to institute penal examinations of the nature of the one which, conformably with the foregoing papers, was opened and carried on agreeably with the forms of legislation adopted in the canton Berne, aganst Francois Farez, blacksmith, burgher of Epiquerez, canton of Berne, and latterly established at Les Bois, as an inn-keeper, in said canton of Berne, for forgery, and the uttering of papers forged by him ; that, in particular, the aforesaid Mr. Justin Brossard, in his said capacity of president of the tribunal of the district of the Franches Montagnes, is legally authorized, and, in said district, the only judge competent to admit complaints against crimes of the nature of those which Farez has committed, to issue warrants of arrest and to cause them to be executed, to hear witnesses, appoint experts, and receive legal oaths ; that further, the interrogatories and opinions of experts, here above reported by said

Justin Brossard, would be amply sufficient to warrant the arrest of Francois Farez, and his committal for trial and judgment before the tribunals of the canton of Berne, if he were in Switzerland, for the crime of forgery and uttering forged papers, of which he is accused." That is a certificate, in substance, that the interrogatories and opinions of experts contained in these papers are receivable before the tribunals of the canton of Berne, in Switzerland, as evidence of the criminality of Farez, because it expressly states that they would be sufficient to warrant his arrest, and committal for trial. If they are sufficient for that purpose, it necessarily follows that they must be receivable in evidence on the question of his criminality. Taking the certificate of the minister and the chancellor together, there is a substantial compliance with the act of 1860. And even if the certificate of the chancellor is to be regarded as speaking only of the interrogatories, and the opinions of experts as being sufficient to warrant the arrest of Farez, and his committal for trial, and as not referring to the complaints and the depositions (which form part of the papers) of the parties whose names were forged, still the certificate of the minister, which covers by name "the warrant, depositions, and other papers," covers the complaints, the depositions, the interrogatories, the opinions of the experts, and their report, and all the other documents. Therefore, on the certificate of the minister by itself, there is a sufficient compliance with the act of 1860, irrespective of anything that is found in the certificate of the chancellor.

The further objection was taken that each one of these papers ought to have been certified by itself. But I think, that these papers form substantialy one proceeding and one document. Each paper refers to the papers which precede it, and they are all as much connected together as are the papers which form the record in a suit in a court in the United States. All of them are proceedings before the same magistrate, in the same tribunal, and relate to the same

In re Farez.

transaction, and I think, they are all properly certified as one paper, and were properly admitted in evidence.

The warrant of arrest issued against the prisoner in Switzerland, and translations of the foreign documents, and the statutes of the state of New York, were then put in evidence without objection. It was then admitted by the counsel for the prisoner, that the prisoner was Francois Farez, and that he was a farrier and hotel-keeper at Les Bois, Switzerland. The prosecution then rested, and the counsel for the prisoner moved to discharge the prisoner on several grounds. The first was, that it ought to be shown that the punishment for the offense charged was infamous, and that that had not been shown. I think, that the proper construction of the 14th article of the convention with the Swiss confederation is, that there can be no extradition of a person charged with any one of the crimes enumerated in that article, unless such crime is subject to infamous punishment in the country where the crime is committed. It was, therefore, necessary to show, in this case, that the crime with which Farez was charged, was subject to infamous punishment in Switzerland. That was, in my judgment, sufficiently shown. The offense charged was clearly, according to the papers, an offense against the laws of the canton of Berne, just as here it would have been an offense against the laws of the state of New York. The complaint and the warrant issued against the prisoner in Switzerland, sufficiently show that the crimes charged are punishable there by imprisonment in the state prison, which must be held to be an infamous punishment.

The second ground was, that the charge before the commissioner was not the same as that set forth in the mandate. This objection has been already disposed of.

The third ground was, that the notes alleged to have been forged had not been produced. That objection, also, has been already passed upon.

The fourth ground was, that the evidence contained in

In re Farez.

the documents produced was not sufficient to warrant the holding of the accused. I think that it was sufficent.

The motion to discharge the prisoner was denied by the commissioner in respect of each of the grounds stated. The counsel for the defense then called the prisoner as a witness, and the counsel for the prosecution objected to his being sworn and examined, on the ground that he was incompetent as a witness. The commissioner sustained the objection, and in that respect, I think, he erred. He ought to have permitted the prisoner to be examined. The proceedings before a magistrate, in this district, in a case of extradition, must be conducted according to the laws of the state of New York, in the particulars in which such proceedings are not specially regulated by a statute of the United States. By an act of the legislature of the state of New York, passed May 7, 1869, (*Sess. Laws of New York, of* 1869, *chap.*, 678,) it is provided, that in all proceedings in the nature of criminal proceedings, in any and all courts, and before any and all officers and persons acting judicially, a person charged with the commission of a crime shall at his own request, but not otherwise, be deemed a competent witness. In this case, the counsel for the defense called the prisoner himself as a witness. It must be intended that this was done at the request of the prisoner, acting through his counsel. I think the prisoner had a right to make his statement as a witness. The 13th article of the convention in question, provides that the person charged with the crime shall be delivered up only when the fact of the commission of the crime shall be so established as to justify his apprehension, and commitment for trial, if the crime had been committed in the country where such person shall be found. Applied to this case, this provision requires that, in order to warrant the commitment of the party for trial, the same evidence shall be required of the fact of the commission of the crime in Switzerland, as would be required of the fact of the commission of the like

crime, if it had been committed here. The good sense of this provision requires that the fact of the commission of the crime shall be established in such a manner and according to such forms of proceeding as would be reqired if the crime had been committed in the country where the person shall be found. The word "country" necessarily, under our form of government, in carrying out the provisions of the convention, means the special political jurisdiction that has cognizance of the crime. In this case the forms of proceeding that must be observed are those of the state of New York; and the prisoner must have an opportunity, if he desires, of making his own statement on oath. This view is confirmed by the analogous course of proceeding which exists in respect to the examination of offenders charged with crimes against the United States. It is provided by the 33d section of the judiciary act of 1789, that for any crime or offense against the United States, the offender may, agreeably to the usual mode of process, that is, mode of procedure, against offenders in the state where such offender may be found, be arrested and imprisoned or bailed, as the case may be, for trial before the proper court of the United States.

It was urged on the hearing, on the strength of an observation made by Mr. Justice NELSON, in the case of *ex parte Kaine*, (3 *Blatchf. C. C. R.*, 1, 10,) that the evidence before the commissioner must be so full as, in his judgment, if he were sitting on the final trial of the case, to warrant a conviction of the prisoner. While I always hesitate to differ with Mr. Justice NELSON in opinion, I am not prepared to adopt this view. It seems to me to be in conflict with the decision in the case of Burr. In that case Chief Justice MARSHALL sat as a committing magistrate on the question as to whether Burr should be committed for trial for the crime of setting on foot an expedition against the territories of a nation at peace with the United States. The chief justice said, (1 *Burr's Trial*, 11): "On an applica-

tion of this kind, I certainly should not require that proof which would be necessary to convict the person to be committed on a trial in chief; nor should I even require that which should absolutely convince my own mind of the guilt of the accused; but I ought to require, and I should require, that probable cause be shown; and I understand probable cause to be a case made out by proof, furnishing good reason to believe that the crime alleged has been committed by the person charged with having committed it." The chief justice acted upon that view, and committed colonel Burr for trial. The convention, in the present case, says that the fact of the commission of the crime must be so established as to justify the commitment of the accused for trial, if the crime had been committed here. The question before Chief Justice MARSHALL in the case of Burr, was merely the question whether Burr should be committed for trial, and the question as to the extent to which the fact of the commission of the crime must be established. To say that the evidence must be such as to require the conviction of the prisoner, if he were on trial before a petit jury would, if applied to cases of extradition, be likely to work great injustice. The theory on which treaties for extradition are made is, that the place where a crime was committed, is the proper place in which to try the person charged with having committed it; and nothing is required to warrant extradition, except that sufficient evidence of the fact of the commission of the crime shall be produced to justify a commitment for trial for the crime. In acting under the 33d section of the judiciary act of 1789, in regard to offenses against the United States, a committing magistrate acts on the principle that, in substance, after an examination into the matter, and proper opportunity for the giving of testimony on both sides, there is reasonable ground to hold the accused for trial. The contrary view would lead to the concluson that the accused should not be given up to be tried in the country in which

the offense was committed, the country where the witnesses on both sides are presumptively to be found, but should be tried in the country in which he may happen to be found. Such a result would entirely destroy the object of such treaties.

The record shows that a motion was made to the commissioner, on the part of the prisoner, to adjourn the further hearing of the case for a sufficient length of time to allow the prisoner to send for and obtain evidence from Switzerland, to be used on the examination, and that the prisoner be admitted to bail. This motion was denied, and properly; for no sufficient foundation had been laid for it at that time.

Afterwards, the counsel for the prisoner renewed the motion for an adjournment for a sufficient length of time to allow the prisoner to send for and obtain evidence from Switzerland, and, in support of such motion, read the affidavits of the prisoner, and of another person. The motion was denied, and properly; for the affidavits do not show that there is any evidence, either oral or documentary, on the part of the prisoner, that exists. or is accessible, or is likely to be obtained. No magistrate would, on such affidavits, have been justified in granting the motion. At the same time, if the prisoner desires to be examined himself, or to have any witnesses examined whom he shall produce, he ought to have the opportunity to examine them.

The counsel for the prisoner having stated that he had no other evidence to offer on the part of the defense, the commissioner held that the evidence produced was sufficient to sustain the charge made, and that the prisoner should stand committed, to await the order of the proper executive authority of the United States. Under such commitment, he is now held by the marshal.

I believe I have considered every question which has been raised in the case. I think that the only error which

In re Farez.

the commissioner made was the one which I have pointed out, of not permitting the prisoner to be examined as a witness for himself. Although, under the laws of the United States, a person on trial for a crime before a petit jury cannot be a witness for himself, yet the preliminary examination of an offender against the laws of the United States, must be conducted according to the mode of procedure which prevails in the state where such offender is found ; and a like rule is to be observed under a treaty of extradition like the one now under consideration.

The prisoner must be discharged from custody under the final commitment by the commissioner; but he is properly held under the warrant of arrest, and must be remanded to the custody of the marshal thereunder. The proper course will be to proceed with the examination before the commissioner *de novo.*