## *In re* Extradition of WADGE.

*(District Court, S. D. New York.* March 27, 1883.)

1. EXTRADITION—AUTHENTICATION OF DOCUMENTS.

The authentication of documents in extradition proceedings, which would be received "in similar proceedings" in the demanding country, when aided by oral proof of handwriting, and by proof showing the purpose for which they are issued, is sufficient under section 5 of the act of August 3, 1882.

2. SAME—TREATY WITH GREAT BRITAIN.

Under the treaty with Great Britain, the latter is entitled to extradition on evidence of the offense sufficient to justify commitment here. The accused, though entitled to examine witnesses in his defense, is not entitled to a full trial here.

3. SAME—PRACTICE—JUDICIAL DISCRETION.

It is not the practice before committing magistrates to receive the depositions of foreign witnesses taken abroad on the part of the defense. *Held,*

therefore, that the commissioner, in extradition proceedings, rightly refused an adjournment applied for by the accused to enable him to obtain the depositions of witnesses in his defense from the country of the demanding government, and that his refusal was not such an abuse of judicial discretion as to be remedied by *habeas corpus.*

4. TRIAL—ACT OF AUGUST 3, 1882, CONSTRUED.

The word "trial," in section 3 of the act of August 3, 1882, must be confined to such a preliminary hearing only as was already allowable under the existing practice.

*Habeas Corpus.*

*F. F. Marbury,* for the British government.

*L. F. Post* and *E. T. Wood,* for accused.

BROWN, J. The prisoner having been held for extradition, under the treaty with Great Britain, on a charge of forgery, has been brought before me on *habeas corpus* and *certiorari.* The authentication of the documents excepted to is made in the exact language of the statute of August 3, 1882, § 5, and by the proper officers, and the signature of the police magistrate is also verified by oral proof. It is likewise shown that the documents were authenticated for the purpose of being used in these extradition proceedings. From the oral evidence, therefore, in connection with the authentication, the intention is clear to certify that these documents are such as would be received in similar proceedings in the demanding country; and that is sufficient. *In re Henrich,* 5 Blatchf. 414, 424; *In re Farez,* 7 Blatchf. 345, 353; *In re Fowler,* 18 Blatchf. 430; [S. C. 4 FED. REP. 303.]

The only other exception is to the refusal of the commissioner to adjourn the proceedings before him in order to enable the accused to procure depositions from England to establish an *alibi* at the time when he is charged with having uttered the forged bill.

Article 10 of the treaty with Great Britain (St. at Large, "Public Treaties,"etc., 320) provides for the surrender of the person accused "upon such evidence of criminality as, according to the law of the place where such fugitive or person so charged shall be found, would justify his apprehension and commitment for trial if the crime or offense had there been committed."

According to the practice here, before committing magistrates, (2 Rev. St. N. Y. *708, §§ 13–20; N. Y. Crim. Code, §§ 188–221; *In re Farez,* 7 Blatchf. 345, 357,) as well as by the provisions of section 3 of the act of August 3, 1882, (c. 378,) while it is the duty of the magistrate before whom extradition proceedings are pending to take such evidence as may be offered on the part of the accused, and to allow

him reasonable time for that purpose, it seems to me clear that this cannot embrace, as a matter of right on his part, an indefinite postponement of the proceedings for the purpose of obtaining testimony upon commission, or by deposition, as regards the commission of the crime alleged, from foreign countries; and especially from the very country which is seeking his extradition for trial there. If this were recognized as the legal right of the accused in extradition proceedings, it would give him the option of insisting upon a full hearing and trial of his case here; and that might compel the demanding government to produce all its evidence here, both direct and rebutting, in order to meet the defense thus gathered from every quarter. The result would be that the foreign government, though entitled by the terms of the treaty to the extradition of the accused for the purpose of a trial where the crime was committed, would be compelled to go into a full trial on the merits in a foreign country, under all the disadvantages of such a situation, and could not obtain extradition until after it had procured a conviction of the accused upon a full and substantial trial here. This would be in plain contravention of the intent and meaning of the extradition treaties, which are designed to secure a trial in the country where the crime was committed, through the extradition of the accused, upon sufficient proof, according to our law, to justify a commitment here. *In re Farez*, 7 Blatchf. 359. Nor is there any warrant, so far as I am aware, according to the law or the practice before committing magistrates in this state, for receiving testimony by commission or by the depositions of foreign witnesses taken abroad; all the provisions of the law and statutes, as above cited, contemplate the production of the defendant's witnesses in person before the magistrate, for examination by him.

The phrase in section 3 of the act of August 3, 1882, "that he" (the accused) "cannot safely go to *trial* without them," (witnesses,) cannot be construed as giving a right to a full trial in violation of treaty stipulations; but it must be confined to such a preliminary hearing only as was already allowable under the existing practice, viz., such as is appropriate to a hearing having reference only to a commitment for future trial.

The evidence of criminality in this case was sufficient. There is no question as to the commissioner's jurisdiction. The determination of questions of adjournment, like other questions of practice, belong properly to the discretion and judgment of the commissioner. *In re Macdonnell,* 11 Blatchf. 79, 100, 170. His decisions on such questions cannot be reviewed on *habeas corpus,* unless they amount to a

clear denial of a legal right through a manifest abuse of discretion. *President* v. *Patchen*, 8 Wend. 47, 64. That is not the case here. His judgment in declining to postpone these proceedings after they had been pending 11 days, for the purpose of obtaining depositions from witnesses in England, instead of remitting the accused to his trial there, where these witnesses could be produced in person and their credibility examined, or witnesses in rebuttal conveniently obtained, was, in my opinion, proper and just. To have allowed such depositions and a postponement of the proceedings until they could be taken and produced here, would, it seems to me, involve a disregard of the plain meaning and intention of the treaty.

The writ of *habeas corpus* is therefore dismissed, and the prisoner remanded.

Affirmed on appeal to the United States circuit court.