MEMORANDUM OPINION AND ORDER
 

 MeGARR, Chief Judge.
 

 On August 21, 1979, petitioner was arrested pursuant to the magistrate’s warrant issued in connection with a State of Israel request for his extradition. The magistrate held extradition hearings pursuant to 18 U.S.C. § 3184 comprising seven days of testimony. On December 18, 1979, the magistrate ruled that she had jurisdiction over the subject matter and the person of the defendant; that the extradition treaty was applicable and was complied with; and that there existed probable cause to believe that this petitioner committed the acts alleged in the extradition request. The magistrate’s detailed memorandum opinion is clearly supported by ample evidence and is hereby adopted by this court and appended hereto. The cause is before this court on petitioner’s request for the issuance of a writ of habeas corpus to prevent his extradition.
 

 [The writ of] habeas corpus cannot take the place of a writ of error. It is not a means for rehearing what the magistrate already has decided. The alleged fugitive from justice has had his hearing and habeas corpus is available only to inquire whether the magistrate had jurisdiction, whether the offense charged is within the treaty and, by somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty.
 

 Fernandez v. Phillips,
 
 268 U.S. 311, 312 (1925) (citations omitted).
 

 A thorough review of the treaty, the Convention on Extradition Between the Government of the United States of America and the Government of the State of Israel, 14 U.S.T. 1707, T.I.A.S. No. 5476, the briefs filed with this court, and the record below clearly demonstrate that the treaty was properly invoked and that the magistrate had jurisdiction over the matter. Petitioner’s arguments to this court rest primarily on the issue of probable cause.
 

 Petitioner alleges that the magistrate improperly excluded evidence which would impeach or “explain” the statement of petitioner’s alleged accomplice in the bombing. The accomplice’s statement implicated the petitioner. The excluded evidence went to the weight of the accomplice’s statement. As such, it was properly excluded.
 
 Collins v. Loisel,
 
 259 U.S. 309, 42 S.Ct. 469, 66 L.Ed. 956 (1922);
 
 Shapiro v. Ferrandina,
 
 478 F.2d 894 (2d Cir. 1973),
 
 cert. dismissed,
 
 414 U.S. 884, 94 S.Ct. 204, 38 L.Ed.2d 133 (1973);
 
 In re Lincoln,
 
 228 Fed. 70, 71 (E.D.N.Y.1915);
 
 Fernandez v. Phillips, supra.
 

 Petitioner next argues that the alleged offense is of a political character and, pursuant to Article VI of the treaty, is not an extraditable offense. The magistrate, properly admitting probative evidence on the issue and properly excluding other prof-erred evidence, and applying appropriate legal standards, found that the alleged offense was not of a political character. The finding is based on competent evidence and is the result of the application of proper legal standards.
 

 For these reasons and those stated in the memorandum opinion of Magistrate Jurco in “In the Matter of the Extradition of
 
 *682
 
 Ziyad Abu Earn, etc., 79 M 175, dated December 18, 1979, petitioner’s request for the issuance of a writ of habeas corpus is denied.
 

 MEMORANDUM
 

 OLGA JURCO, Magistrate.
 

 Extradition proceedings were commenced by the United States on behalf of the State of Israel under § 3184, 18 U.S.C. and Article X of the Treaty between the United States and Israel which has been in effect since December 5, 1963. Ziyad Abu Eain was arrested on the complaint charges on August 21, 1979 and remains in custody. He is charged to have committed, in Tiberias, Israel, the crimes of murder, punishable by life imprisonment, and causing bodily harm with aggravating intent, punishable by twenty-year imprisonment. Said crimes were allegedly committed by placing an explosive device on May 14,1979 in a trash bin located on a public street in a market square, which device exploded and caused the death of two young Jewish males and injured thirty-six other persons.
 

 The extradition hearing commenced September 26, 1979 in order to accommodate availability of witnesses for the government and the accused and was adjourned to later dates for the same purpose. The hearing took seven days. Following the closing of evidence, the parties requested and were granted leave to file post-hearing briefs. Later filed motions have been received directed to receipt of additional evidence and exclusion of certain evidence.
 

 The evidence presented must satisfy these necessary elements: (1) that a crime was committed in Israel, (2) that the offense charged is an offense in the United States, (3) that the person arrested and brought before the Magistrate is the person accused of the commission of that offense, (4) that the evidence establishes reasonable grounds to believe the accused is guilty of the offense, and (5) that the offense is an extraditable offense under the terms of the Treaty.
 

 Under the procedure provided for by § 3184 and the Treaty, the government introduced into evidence its Government Exhibits 1 through 4a, which were accompanied by the certificate of the principal diplomatic and consular officer resident in Israel. Such certificate is proof that the documents included under that certification, or copies thereof, are authenticated in the manner required by law and the Treaty. The accused has not challenged the adequacy of such certification.
 

 No contention is made that the government’s evidence does not establish that the offenses of murder and “malicious wounding, inflicting bodily injuries” were committed in Israel, or that they are offenses covered by the Treaty between the United States and Israel, and that these offenses are recognized as crimes under the laws of Illinois, which if committed here would be the crimes of murder, attempted murder, and aggravated battery. Ill.Rev.Stats., 1977, Ch. 38 §§ 8-4, 9-1, 12-4.
 

 Evidence was presented to bear upon two important issues: (1) the competency and sufficiency of the evidence to establish probable cause to believe the offenses charged were committed, that the person
 
 *683
 
 charged committed these offenses, and that the person arrested and before the court is the person named in the complaint;
 
 [1]
 
 and (2) whether the charged offenses are political offenses and therefore offenses for which the accused cannot be extradited as provided in Article VI(4) of the Treaty between the United States and Israel.
 

 The government called to the witness stand law enforcement officers who arrested Ziyad Abu Eain in Chicago pursuant to the arrest warrant and who took the fingerprints of the arrested person. The government also presented testimony of its fingerprint specialist, Special Agent Thomas Gremmere. Among the certified and authenticated documents were a set of fingerprints identified as those of Ziyad Abu Eain and his photograph (Government Exhibit 1, pp. 21-22, p. 16). Agent Howe testified that following his arrest and fingerprinting on August 21, 1979, he asked Ziyad Abu Eain about the name Tarifi and was told that “that is what they call me” (Tr. 25-27). The Statements of Jamal Hassan Yasin and of Mufida J. Khalil Jaber (Govt. Ex. 1, pp. 7-13) refer to the name Tarifi and identify the picture of Ziyad Abu Eain as the person with whom each had spoken. His brother-in-law testified that nicknames are often applied on the basis of an ancestor’s home town (Yusuf, Tr. 1400-3). The accused argued that his arrest in Chicago was illegal and without due process and his fingerprints taken “under a coercive situation” (Tr. 46) following his arrest cannot be used because he neither speaks nor understands English; that Govt. Exs. 5 and 6 were procured through violation of his constitutional rights guaranteed by American law and cannot serve as a comparison basis with the fingerprints received from Israel. He also states that the fingerprint evidence from Israel establishes only identity and there is no evidence as to when, where and why the Israeli card was executed or evidence of any fingerprints taken in connection with the events upon which the charges are based.
 

 I am satisfied that the accused understood he was arrested on a warrant requested by State of Israel, and identified his fingerprints by his own signature with understanding that he was identifying his own fingerprints. The circumstances surrounding the arrest and fingerprinting are disclosed in the record, and I further find that his arrest and fingerprinting process was in accordance with the law of the United States; that his arrest was lawful. Neither the arrest nor the fingerprint process violated rights guaranteed under the laws of the United States or State of Illinois. The Israeli fingerprints were offered to show that the person arrested is the person named in the sworn complaint, and their source or connection to the charged offense is not required to show they belong to the same person. I find that the person arrested, Ziyad Abu Eain, is the person named and charged in the sworn complaint and is the person whose extradition is requested by the State of Israel.
 

 The evidence received from Israel and produced by the United States on its behalf satisfies the Treaty requirements and statutes and is therefore competent evidence.
 
 [2]
 
 The question is whether such evidence is
 
 *684
 
 sufficient to show reasonable grounds to believe the accused committed the offenses charged.
 

 The Statement of Yasin is the principal document which implicates the accused in the events of May 14, 1979. In substance, Yasin avers that he and accused, Ziyad Tarifi, knew each other and “we are pals;” that on May 11, 1979 they went to Tiberias where for three hours they walked around its market area and main streets; they talked politics and Yasin enlisted the accused in Fatah; that Yasin wished to carry out an attack in Tiberias on May 14; that on May 14 Yasin prepared an explosive charge in his home and met the accused, asking whether they should carry out the attack in Tiberias today; that the accused was willing to do so and Yasin instructed him on how to set the clock and wires in the explosive charge; that thereafter Ziyad Tarifi asked to go alone to Tiberias to carry out the attack; Yasin gave the accused the explosive charge, told him to put the charge in a refuse bin in Tiberias, it did not matter what refuse bin, and not to go near any army vehicle so that he or the car might not be suspected; that because of an arrest made, he told accused they were in danger, not to do anything until Yasin contacted him; that Yasin gave a letter to his cousin Mufida Jaber to deliver to the accused; she told him it was delivered and that the accused had gone to America. The statement declares that it was read to Yasin and that he certified its correctness by his signature.
 

 By letter of November 21st, responded to by the government November 27th, the accused has called attention to the English translation of that statement, and that the translator’s certificate is dated August 15, 1979 “approximately five (5) weeks before the purported confession was tendered.” As the government reply states, by this obvious contradiction of date, the accused seeks to cast doubt on the authenticity and veracity of the entire Statement of Yasin. It is an admitted mistake by the English translator. However, such inconsistency and discrepancy is of no consequence if there exists in those documents any other competent evidence. The Hebrew statement itself (Ex. 1, p. 9) bears the legible date of 23-7 — 79 above numbered line 1, and the reaffirming affidavit of Ya-sin (Ex. 1, p. 8) attests to the making of the statement on July 23, 1979. The letter from the accused also asserts that neither the Statement of Yasin nor the Statement of Jaber carry translations from Hebrew, the language in which they were written, into Arabic and vice-versa, to assure understanding by the affiants. Government Ex. 1, p. 34, relating to reaffirming statements of Yasin and Jaber of their prior statements is a summary of proceedings before Magistrate Shabtay wherein he avers that he “conversed with them in Arabic” and that both understood the contents of their statements. In addition, each statement — that of Yasin of July 23, 1979 and that of Jaber of July 4, 1979 — recite it was read to them and they certified the correctness by their signature.
 

 The accused contends the evidence in support of a finding of probable cause is not sufficient in that (1) the Statement of Jamal Hassan Yasin is that of an accomplice and therefore must, under Illinois law, be received and acted upon with caution; (2) the Statement of Yasin is a self-serving declaration and no other corroborative evidence connecting the accused to the offense has been presented and further this in-custody, self-serving declaration may have been made under duress, or for reward, or relief from interrogation; (3) the Statement of Yasin and its contents have not been buttressed by other corroborative evidence; (4) the Statement of Yasin does not meet the minimum requirements as evidence of probable cause under the laws of the United States and State of Illinois because the Hebrew statement is not shown to have been understood by Yasin and not shown to have been made freely and voluntarily; (5) the Statement of Yasin was twice recanted by him, further demonstrating its unreliability; and (6) the Statement of Jaber contains no details pertaining to the alleged bombing to show probable cause, and further does not establish
 
 *685
 
 “flight” of the accused. Each of these contentions is directed to the evidentiary or qualitative sufficiency of the statements. The parameters of probable cause hearing are not to determine guilt or innocence; an extradition hearing is not a trial. The sworn statement of a co-defendant or accomplice must be considered together with all other facts adduced at the hearing.
 

 Corroborative evidence of facts is found in the Statement of Jaber. She states she received a note from her cousin, Yasin, which note advised Ziyad that others had been caught and to be careful; that Ziyad asked her where Jamal was and she stated she did not know; that Ziyad said he wished to go to America that day; that she conveyed the message to her cousin that Ziyad wanted to go to America. Government Exhibits 1 through 3 show that an explosion, from an explosive device, occurred in the market area on a main street in Tiberias, Israel on the afternoon of May 14, 1979 at approximately the time for which the device was set. These are corroborative evidence that Yasin and the accused knew each other, that Yasin warned the accused to be careful because others had been arrested, that in Tiberias on May 14, 1979 an explosion occurred at the approximate time the device was set.
 

 The suspected “voluntariness” of the Yasin statement, because of the “usual” manner by which these are given and the “recanting” thereof by Yasin were sought to be introduced by the accused. That effort was refused because I may only receive evidence offered by the accused that explains or clarifies the demanding country’s proof. The accused does not have the right to contradict the demanding country’s proof or pose questions of credibility. .
 
 Collins v. Loisel,
 
 259 U.S. 309, 42 S.Ct. 469, 66 L.Ed.2d 956 (1922);
 
 Shapiro v. Ferrardino,
 
 478 F.2d 894 (2nd Cir. 1973).
 

 The accused filed a Motion to Reconsider and Admit Proof contained in his Exhibits 25 through 42, previously refused admission into evidence during the extradition hearing. It is contended that these documents support the truthfulness of Ya-sin’s retracting statements that Ziyad Abu Eain was not involved in the events of May 14, 1979 and also to show the physical circumstances and background facts surrounding May 14, 1979. These sworn documents attest to an averred presence of the accused in Ramallah, not in Tiberias, on May 14, 1979 due to the birth of a nephew. Defendant’s Exhibits 25 through 38 are also offered to substantiate a later Yasin retraction of his prior statement of July 23, 1979 to show inferentially the quality of the self-styled confession of Yasin. The Motion to Admit Exhibits 25 through 42 is denied: first, because the exhibits inextricably involve the defense of alibi which cannot be adjudged by this court, and second, because they require as a preface the admission in this hearing of Yasin’s retraction of his July 23, 1979 statement. (Defendant requests on adverse ruling on Motions to Admit Proof of Exs. 23 through 42 his motion and exhibits be treated as offers of Proof; his motion is denied and the same are added as Offers of Proof.)
 

 The Supreme Court of the United States in
 
 Charlton v. Kelly,
 
 229 U.S. 447, 461, 33 S.Ct. 945, 949, 57 L.Ed. 1274 (1913), quoting
 
 In re Wadge,
 
 15 Fed. 864, 866 (2nd Cir.), has stated that to allow such evidence for the accused in defense:
 

 “ * * * would give him the option of insisting upon a full hearing and trial of his case here; and that might compel the demanding government to produce all its evidence here, both direct and rebutting, in order to meet the defense thus gathered from every quarter. The result would be that the foreign government, though entitled by the terms of the treaty to the extradition of the accused for the purpose of a trial where the crime was committed, would be compelled to go into a full trial on the merits in a foreign country, under all the disadvantages of such a situation, and could not obtain extradition until after it had procured a conviction of the accused upon a full and substantial trial here. This would be in plain contravention of the intent and meaning of the extradition treaties.”
 
 *686
 

 Shapiro v. Ferrardino,
 
 478 F.2d 894, 905 (2nd Cir. 1973).
 

 The accused has requested reconsideration of previous denial of his Exhibits 23, 24 and 25 to show that the government of Israel is acting in bad faith, that extradition is sought for the offense of membership in a political organization — a crime not included in the extradition treaty and in violation of Article XIII thereof, and that such crimes are tried by military tribunals and not civil courts. These were refused admission because of immateriality to the charged offense and further for lack of authenticity of document source. The government, during the hearing, advised that formal charges by the State of Israel were enroute through diplomatic channels. .At a date subsequent to the hearing, Government Exhibit 37 was received into evidence to assure the accused that the charges against him were the charges in the sworn complaint and that the same were to be tried in the civil courts of Israel.
 

 From a review of the testimony and all evidence received, and all reasonable inferences to be drawn therefrom, the finding is made that there is evidence furnishing probable cause to believe that, as charged in the sworn complaint for extradition, the crimes of murder and causing bodily harm with aggravating intent, were committed in Tiberias, Israel by the accused Ziyad Abu Eain, whose identity has been established as being the same person who is named in the extradition complaint. The offenses are crimes in the State of Illinois and are offenses included in the Treaty as extraditable.
 

 There remains the important issue of applicability and interpretation to be given to Article VI(4) of the Treaty and its effect on the finding of probable cause to believe accused committed the offenses charged. The Treaty provides: '
 

 “Extradition shall not be granted in any of the following circumstances:
 

 ‡ $ ‡ ‡ ‡
 

 “(4) When the offense is regarded by the requested party as one of a political character or if the person sought proves that the request for extradition has, in fact, been made with a view of trying or punishing him for an offense of political character.”
 

 On this issue, the parties have presented additional requests following the post-trial briefing with regard to admission or exclusion of evidence. (1) The government seeks the admission of the Minority Report of the National Lawyers Guild on Treatment of Palestinians in Israeli Occupied Territories as Government Exhibit 38 as a necessary part of Defendant’s Offer of Proof, Exhibit 4, which'is the Majority Report of the National Lawyers Guild, offered and refused admission during the testimony of William Montross. The government’s motion is denied for the reason that the Majority Report was refused admission into evidence. (2) The defendant’s motion for leave to file Exhibit 43 into evidence, being the 1979 United Nations Security Council meetings of January 19, March 13, 19 and 22, and June 29 is denied. The tender is made long after the closing of evidence. (3) The defendant’s motion to exclude the testimony of government witness Louis Fields is denied. All of the reasons stated in support of that motion were a part of the discussions and considerations held during the hearing of October 10, 1979.
 

 On September 27th and during the extended hearing, the accused requested that judicial notice be taken “that there is now, and has existed for more than three decades, a military and political conflict between the Government of the State of Israel and the several Arab states and the People of Palestine.” Judicial notice was refused because that doctrine includes admission only of those matters generally known within the territorial jurisdiction of the trial court, or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned (Cf Ev. Rule 201(b)).
 

 The accused presented evidence to show that the offenses, if committed by him, are offenses which are “political in character.” Evidence was received which sought to ex
 
 *687
 
 plain and clarify the nature of the conflict in the Middle East before, during and after the 1948 proclamation of a State of Israel (formerly called Palestine) and the Arab population which resided there, as well as the 1967 occupation by Israel of the West Bank in the country of Jordan, including the Arab sector of the City of Jerusalem.
 
 [3]
 

 A relative political offense is one, which standing alone, is a common crime, but if it is connected with a civil war or other similar disturbance it becomes a political offense for purpose of avoiding extradition. (Mallison, Tr. 819; Fields Tr. 1041, 1071). The accused’s evidence is directed to show that these offenses, if committed by the accused, come within the category of political offenses. Professor Mallison also described a political offense as an offense committed for the purpose of changing the governmental structure (Tr. 820). It was his opinion that there was and is a state of war since 1948 in Israel or that there exists an insurrection in Israel (Tr. 779-780, 822-823); that the conflict in the Middle East is a political and military conflict (Tr. 735) and that the purpose of the P.L.O. is to alter the governmental structure in Israel and Palestine (Tr. 805). He also testified that non-combatants have a different relationship to enemy power and that direct attacks on civilians are unlawful notwithstanding the perpetrator’s identity (Tr. 835, 832-36, 863-64, 867).
 

 The testimony of Mayor Qawasmeh of Hebron, Jordan, and that of Ms. Johnson, former State Department vice-consul in City of Jerusalem, described the manner and condition of Arab life in the occupied West Bank of Jordan. It was elicited from these witnesses that the occupied West Bank is governed through Israeli military governors (Qawasmeh, Tr. 286); that there is freedom of election exercised by West Bank Arabs in local self-government and no Israeli votes in such election (Qawasmeh, Tr. 435); that there are civil courts with Arab judges (Qawasmeh, Tr. 451 — 452); that Jordanian law is applied in the West Bank (Qawasmeh, Tr. 319); that freedom of movement is generally permitted (Qawasmeh, Tr. 438, 461) but there are also restrictions and in certain areas person and property are subject to search (Johnson, Tr. 514-516; 552-554); that membership in certain organizations is subject to arrest and punishment in Israeli military tribunals (Johnson, Tr. 527-528; Qawasmeh, Tr. 323, 327); that expropriation of land and seizure of property occurs for commission of certain acts and crimes (Qawasmeh, Tr. 373, 413, 447 — 449); that there is resistance to Israeli occupation of the West Bank; that the P.L.O. is the representative for the Arabs (Qawasmeh, Tr. 426 — 428, 432). The evidence also showed that the demography of Israel and the West Bank of Jordan has altered considerably in that there has been a great increase in the area of the Jewish population (Rabbi Berger, Tr. 630-633); that this is due to dedication to Zionist principles in the creation of Israel establishing national rights for Jews (Berger, Tr. 604-605, 608-609); that the Palestinian Arabs do not consider they are citizens of the country of Jordan and do not want citizenship there (Berger, Tr. 697; Qawasmeh, Tr. 430-431).
 

 Counsel for accused states the political program of Fatah is directed to “creating a ‘democratic non-sectarian state’ in place of the present State of Israel; and resisting Israeli occupation of Palestinian land.” (Dft. Brf. p. 27; Berger Tr. 672-673). The accused emphasizes that the P.L.O. has received recognition as the legitimate representative for the Palestinian-Arabs in the United Nations, is an official observer in that body and has been recognized by other organizations and countries (Tr. 808). He calls attention to the concern of the world community of nations through the Geneva Convention and United Nations resolutions for adherence to humanitarian considerations to be given by Israel to Palestinian-
 
 *688
 
 Arab refugees in the occupied West Bank of Jordan. Exhibits have been received in evidence dealing with such concern.
 

 The government regards all of the accused’s evidence to be irrelevant. It urges that because the offenses involved the death and injury of innocent victims, it is an act of terrorism, and further, under any theory of “offense of political character,” parties who are the target victims must be considered. (Fields, Tr. 1041; Govt. Ex. 10; Mallison, Tr. 833, 867, 869-70). The accused sought discovery as to the status of those who were killed and injured; it was denied. It was the testimony of Louis Fields, appearing as the authorized spokesman for the Department of State, and who is Legal Adviser for the Department of State, that the offenses described in Government Exhibits 1 through 3 are viewed by the Department of State as common crimes and not offenses of political character, because “it was indiscriminate use of violence against civilian populations, innocent parties” (Tr. 1038, 1041, 1053).
 

 In evaluating the nature of the offenses, various scholars on the subject of political offenses have delineated certain tests to assist in the determination. Among these are the following: (1) the offender’s past participation and involvement with a political movement and his personal beliefs as tied to a political motive; (2) existence of a connection or link between the crime and political objective; (3) relation or proportion between the crime and its method of commission and the political objective.
 
 [4]
 

 The accused refers to the Statement of Yasin to show his political motivation in that they talked politics and he agreed to enlist in the Fatah organization. There next must be shown a connection between the crime and the political objective of Fatah and the P.L.O. The statement of Yasin shows he wished to carry out an attack on May 14, that the date was a Monday, not a Tuesday, as he had thought; that the attack was to put “the explosive charge in a refuse bin in Tiberias; it did not matter what refuse bin,” that he admonished the accused not to go near an army vehicle. The target is not otherwise described. The statement of Peretz (Ex. 1, pp. 23-26) states that May 14 was the eve of Lag Be’omer (a religious festival) and there was a rally of youth in Tiberias. Rabbi Berger testified that May 15 is the day usually recognized as a holiday because of the establishment of the State of Israel, but could not state whether it occurred on May 15, this year (1979) because the State of Israel runs on a lunar calendar (Tr. 674, 675, 704). Government’s evidence shows that on May 14, two young Jewish males were killed and thirty-six other persons were injured and hospitalized; that Tiberias is a sea resort town located on the Sea of Galilee, which had been a part of the State of Israel since 1948; Government Exhibits 2 and 3 show the explosive was placed in a public place, near a bus stop on Galil Street in the market square in Tiberias, Israel. The accused seeks shelter in the history and evidence of Israeli-Arab conflict and in the existence of the P.L.O. as his political motivation to kill and injure; in other words, he seeks to equate the actions of violence as political because he is a member of an organization which acts for and on behalf of the P.L.O. Counsel for accused urges that evidence of the conflict and turbulence between Israel and the Palestinian-Arabs, the existence of the P.L.O. as the central representative for the Palestinian-Arabs, and the tactics of the P.L.O. in achieving its political objective, “tend” to show his alleged offenses were political offenses; that the burden now shifts to the government to show otherwise and it has failed to show that innocent civilians were killed and injured. That argument overlooks a significant issue — that it is accused whose acts are subject to scrutiny; he must show the link between the crimes he allegedly committed and their relation to the political objective.
 
 *689
 
 Exemption of relative political crimes exists only where such crimes are directed against the political organization of the State. The achievement of that political objective has not been linked to the means used and the target involved. The evidence shows a random selection of the locale; a locale where a Youth Rally and religious festival was being held in Tiberias, Israel. Defendant’s argument seeks to lead to a conclusion that every Israeli present in Tiberias is in the military service of his country and therefore cannot be regarded as a civilian; that a violent act by a Palestinian-Arab against an Israeli comes within the political offense exception.
 

 Accepting that defendant was a member of a P.L.O. organization and with motivation toward its political objective, there is nothing in the evidence which “tends” to show that this act was directed in opposition to the State of Israel and that the crime furthered the cause of his group objective. He has not shown the relation between these crimes, the method of their commission and the political objective. The random and indiscriminate placing of an explosive near a bus stop on a public street in any trash bin defuses any theory that the target was a military one or justified by any military necessity. It was an isolated act of violence. The commission of these alleged offenses is so remote from the political objective that it could not reasonably have been believed by the offender to have a direct political effect on the government of Israel; nor was it directed at the government of Israel.
 

 The accused has failed to present evidence establishing, or even tending to establish, that the nature and the circumstances of the commission of the common crimes of murder and causing bodily injury with aggravating intent are such as to make such crimes as offenses of a political character.
 

 For all of the above and foregoing reasons, I find probable cause exists to believe the accused committed the charged offenses and find further that the nature and circumstances of their commission are not within the exception from extradition as an offense political in character.
 

 [1]
 

 . Article V, Treaty. Extradition shall be granted only if the evidence be found sufficient, according to the laws of the place where the person sought shall be found, either to justify his committal for trial if the offense of which he is accused had been committed in that place or to prove that he is the identical person convicted by the courts of the requesting Party. Article IX, Treaty. The determination that extradition based upon the request therefor should or should not be granted shall be made in accordance with the domestic law of the requested Party and the person whose extradition is sought shall have the right to use such remedies and recourses as are provided by such law.
 

 [2]
 

 .
 
 Exhibit 1
 
 consists of 34 pages as follows: Statement of Jamal Hassan Yasin (pp. 7-13), Statement of Mufida Khalil Jaber (pp. 14-20), Israel fingerprints (pp. 21-22), Statement of Police Capt. Peretz (pp. 23-26), Notification of Death of Boaz Lahav and David Lancri (pp. 27-30), Israel arrest warrant for Abu Eain (pp. 31-32), Statement of Proceedings on 8/24/79 by Magistrate Shabtay (pp. 33-34).
 
 Exhibits 2 and
 
 3 — Ex. 2 is a copy of Ex. 3 showing site of explosion;
 
 Exhibits 4 and 4a
 
 — the Extradition Treaty between United States and Israel.
 

 [3]
 

 . Palestine had been under British mandate from 1920 to 1948. In 1947 the United Nations adopted a Palestine Partition Plan which divided Palestine into an Israel and Arab State of Palestine. Armed conflict ensued between the State of Israel and the surrounding Arab countries.
 

 [4]
 

 . Cantrell, The Political Offense Exception in International Extradition, 60 Marquette Law Journal 777 (1977); Garcia-Mora, the Nature of Political Offenses, 48 Virginia Law Review 1226 (1962); Green, Political Offenses, War Crimes and Extradition, 11 International and Comparative Law Quarterly, (1962).